# Richmond

SAMUEL T. TAYLOR v. ROBERTSON CHEVROLET COMPANY,
INC., AND LIBERTY MUTUAL INSURANCE COMPANY.

February 24, 1941.

Record No. 2402.

Present, Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

*Charles W. Crowder,* for the appellant.

*John G. May, Jr.,* and *Cutler May,* for the appellees.

HOLT, J., delivered the opinion of the court.

Samuel T. Taylor was an employee of the Robertson Chevrolet Company. He met with an accident and sought compensation from his employer. The Industrial Commission of Virginia was of opinion that he was not entitled to recover, and from its judgment comes this appeal.

Honorable Parke P. Deans, Chairman of the Commission, has made this very excellent statement of the facts:

"Samuel T. Taylor was in the employ of the Robertson Chevrolet Company, Inc., as automobile salesman at agreed average weekly wage of $25.00. It was agreed that he had an accident on January 10, 1940, but the question for determination is whether the accidental injury arose out of and in the course of the employment.

"Taylor testified that he has been in the service of the Robertson Chevrolet Company since August 15, 1939, as a salesman, and in addition to these duties he does whatever is necessary when requested by his employer. About thirty days after starting to work for this employer the night watchman was out sick and this employee looked after the premises. He explained this was done because he lived a block and half away from the place of business. It was necessary that some one be available who could receive new cars that were being delivered and the employer furnished this employee a key so that he could do this work. On some occasions he would be called to the plant after the 10:30 P. M. closing time and would remain there until midnight or even 4:30 in the morning. These calls would be made practically two to five nights a week. His main duties, however, were those of automobile salesman securing prospects anywhere and by any means available, and he frequently received 'phone calls at home from prospects. Most of the automobile sales were made outside of the employer's place of business, but the employer has a rule that each salesman must spend a half day on the floor of the sales room one or two days a week. Particularly one would have to serve in the sales room on a morning and then the next occasion would be in the afternoon from one o'clock to six o'clock. On other occasions a salesman would be on duty in the sales room from six to ten P. M. This was done in order to place the salesmen in rotation so that some one would be on duty all the time and so that no one would serve wholly on night or day duty on the floor. A salesman would have night duty probably once or twice a week. On January 10th, 1940, this employee had left his apartment at 1109 West Grace street, which was in the same block as the employer's place of business on Broad street, Broad street and Grace street running parallel and next to each other, so that he would have to walk from his apartment to the

corner, then to Broad street to the employer's place. He was on the sidewalk in front of 1123 West Grace street at about 5:45 P. M. when the accident occurred. He had just left his apartment to walk around on Broad street to the employer's place of business to be there at six P. M. for floor duty, where he would remain until approximately ten P. M. On January 10th, he had been making his calls on prospective purchasers, had gone to his apartment for his supper and was en route to the employer's place when injured. Considerable emphasis was placed on the fact that he would frequently be at home when he received telephone calls from prospective customers or would make such contacts on the street or wherever a prospect seemed available, so that he would be subject to call anywhere he might happen to be. Earlier in the afternoon he had notified his wife that he would be home for supper, as he would be on duty that night, and asked that his supper be prepared a little earlier so that he could get back to the employer's to relieve the day man. At the time of his accident he was on his way from his apartment to his employer's for the night floor duty. He admitted that he was not going to make any calls on prospects between the time of leaving his apartment and walking to his employer's place of business, planning on being there at six o'clock for floor duty. However, if while making this trip to his employer's he had been stopped by a prospective customer he would have stopped long enough to have given the interview but would have cut his interview with his prospect short so as to have gotten around to the employer's place.''

This accident occurred on January 10, 1940. Petitioner had been down town all day interviewing possible buyers and was expected to report to the warehouse of the employer at six o'clock for a tour of floor duty which was to hold him until ten. Detained in his efforts as salesman, he telephoned to his wife and asked that supper be put a little forward that he might reach the ware-

house on time, or at six o'clock. Immediately after supper, and at 5:45, he left his home and near it slipped on the sidewalk, fell and was hurt.

The warehouse is on the south side of Broad street; this home is on the north side of Grace, in the same block and within an easy stone's throw of each other.

We are to determine if this accident arose out of and in the course of his employment.

It is petitioner's contention that he was going from one place of business to another—from work as a downtown salesman to floor duty at the warehouse—and that continuity of employment was not broken because he stopped at home for supper.

If Taylor, after his work as solicitor in Richmond was completed, had, on orders, gone to a warehouse in Manchester for this master and had been injured on the way, he could recover.

■ In Schneider on Workmen's Compensation, Second Edition, Vol. 1, p. 749, section 263, it is said:

"Where an employee is required to go to outside places to work and to return to the employer's office to report, he is at all such time acting in the course of his employment, and is entitled to compensation if injured by accident at such time."

And again, p. 744, section 266:

"Where an employee slipped and fell while walking from one place of employment to another, it was held that the accident arose out of and in the course of the employment."

When does a detour or deviation prevent a recovery? When is a servant no longer about his master's business?

Here, if it is lost at all, it is because petitioner stopped at his home for supper.

■ "Of course a servant is not required to return by air line from an errand performed, nor must he adopt the shortest practicable route. A detour in reason does not change his status, but an abrupt and unmistakable

departure for some purpose of his own does. Here as we have seen it was his purpose to go away from his factory for thirty-five blocks on a mission of no interest to his employer." *Virginia Ice, etc., Corp.* v. *Coffin,* 166 Va. 154, 184 S. E. 214.

Had this home been on Church Hill instead of within a block of the warehouse, the situation would have been different.

Petitioner's rights are quite like they would have been had he stopped at a restaurant for a quick lunch and not at home for an early supper. His purpose was to get something to eat and not to go home.

Servants on their master's business are protected from hazards incident to street travel. *Norfolk & Washington Steamboat Co.* v. *Holladay,* 174 Va. 152, 5 S. E. (2d) 486.

In *Whalen* v. *Buchman* (1937), 200 Minn. 171, 273 N. W. 678, it appears that a corset canvasser was required to report to the office at night for instructions. This Buchman, a canvasser, did after the day's work was done and after supper. On her way she was struck by an automobile. In a syllabus by the court it was said:

"As part of the employment of canvassing allotted territory for customers, the respondent was required to attend instructions at the employer's office on certain evenings. On her way to attend such instructions respondent met with an accidental disabling injury. It is held that the evidence supports the finding that the accidental injury arose out of and in the course of her employment."

Her rights were not forfeited because she had gone home to supper, and they are not defeated unless there is some material deviation from the line of duty, just as one, delivering wood, who stops to buy tobacco, continued to be employed. *Springer* v. *North,* 205 App. Div. 754, 200 N. Y. S. 248, cited with approval in *Bradshaw* v. *Aronovitch,* 170 Va. 329, 196 S. E. 684.

In *Parrish* v. *Armour & Co.,* 200 N. C. 654, 158

S. E. 188, it appears that a salesman out of the strict line of his duty detoured for 3,500 feet to a drug store to buy cigars and on his way back to where he should have been was hurt. A recovery was sustained and in its support Pollock on Torts (6th Ed.), p. 84, was cited, where it was said:

" * * * Not every deviation of the servant from the strict execution of duty, nor every disregard of particular instructions, will be such an interruption of the course of employment as to determine or suspend the master's responsibility. But where there is not merely deviation, but a total departure from the course of the master's business, so that the servant may be said to be 'on a frolic of his own,' the master is no longer answerable for the servant's conduct."

This same principle was applied in another Minnesota case, *Jeffers* v. *Borgen Chevrolet Co.* (1937), 199 Minn. 348, 272 N. W. 172. There a salesman of automobiles, etc., in the line of his duty, who was returning to his employer's garage, stopped to take supper with his wife's relations and was hurt. A recovery was sustained.

In *Rainford* v. *Chicago City Ry. Co.*, 289 Ill. 427, 124 N. E. 643, it appears that a street car track passed near the plaintiff's home. On it there was a schedule stop at a restaurant where the conductor was supposed to get his lunch. For some reason his car ran by it. In a headnote it is said:

"A street car conductor's act in stopping his car in front of his home and going there to order his lunch to be carried to the place allowed for the regular lunch period, is an incident to his employment, and his injury by a car on another track arises out of and in the course of employment, within Workmen's Compensation Act."

In *J. E. Porter Co.* v. *Industrial Commission, et al.*, 301 Ill. 76, 133 N. E. 652, a plaintiff, for his company, had been in Peoria and was returning to Ottawa where he lived and where his company was located. As the

street car passed his home he stopped there for lunch and then started to walk to the factory to settle his accounts. A recovery was sustained.

In *Bachman* v. *Waterman,* 68 Ind. App. 580, 121 N. E. 8, 10, the court, in sustaining a recovery, said:

"Under the facts this case is not governed by those decisions wherein it appears that a workman was injured while returning from or going to his place of work, the day's duties being completed or not yet commenced, but rather by that other line, wherein, the day's service in its general scope being completed, there yet remains some other incidental duty; the workman being injured while performing it. In such cases it is held that the injury arises out of and in the course of the employment."

In the instant case duties unperformed were not merely incidental but definite.

There is another angle of approach: The substance of Taylor's claim is that on the day of the accident he went from one definite assignment by the master to another, from work downtown to duty at the warehouse. He was to be "on the premises of the Robertson Chevrolet Company from six until ten on what is known as floor duty." Had he, pressed for time, when on his way to the warehouse stopped at a restaurant for supper and had he afterwards, in negligence, injured another, could the defendant be heard to say, "He was my servant until supper but not afterwards?" Such a claim would be untenable. Where a master is liable for some negligent act of a servant done about the master's business he is also liable to the servant in damages for an injury then suffered by him, for such an injury would have arisen out of and in the course of his employment. His stopping for supper at his home was purely incidental; he was definitely on his way back to the warehouse pursuant to instructions. He was still about his master's business.

In support of its conclusions the Industrial Commission cites and relies upon *Taylor* v. *Binswanger & Co.,*

130 Va. 545, 107 S. E. 649. There an employee was hurt on his way from the factory to his home for lunch. In substance the same rule was adopted by us in *Kent* v. *Virginia-Carolina Chemical Co.,* 143 Va. 62, 129 S. E. 330. There the employee had completed his work, started for home in the city of Lynchburg and was hurt. Cases of this kind, and there are many of them, fall into one of three classes—where service has not been begun, where it has ended, or where it has, for the time, been definitely suspended. In *Kent's Case,* Judge Chichester, in denying him the right to recover, said: "He was not charged with any duty or task in connection with his employment on his way home which carried him over this route," and names as one of the exceptions to the general rule this: "Where the employee on his way to and from the work is still charged with some duty or task in connection with his employment." Taylor was still charged with duties unperformed. As we have seen, he was going from one assignment to another.

We think the distinction pointed out in *Bachman* v. *Waterman, supra,* an Indiana case, from which State our Workmen's Compensation Act is taken, is a sound one. There it was also said:

"If at the time the duties of the day under his employment had not been completely performed, but, on the contrary, he was still doing the work he was hired and expected to do, if in his employer's interest he was proceeding to call on a customer or prospective customer, or if he was moving to wind up his day's work in a manner expressly or tacitly required and expected by his employer, then it follows that he was injured by an accident arising out of and in the course of his employment."

On the day of his accident Taylor's duties kept him downtown until the time for him to report at the warehouse was about at hand. In order for him to comply with this second assignment an early supper was necessary that he might hurry on. We have a simple

case in which he was required by the defendant to go from one assignment to another. He had to eat somewhere, and his rights are not affected by the fact that he ate at home instead of in a restaurant. The detour to his home was too slight to be of moment.

We are of opinion that the order appealed from should be set aside, and that this cause should be remanded to the Industrial Commission of Virginia that it may fix the amount of the plaintiff's recovery.

*Reversed and remanded.*

Gregory and Eggleston, JJ., dissenting.