## Richmond

### BETTY L. THORE

v.

### CHESTERFIELD COUNTY BOARD OF SUPERVISORS

No. 0655-89-2

Decided May 8, 1990

COUNSEL

B. Mayes Marks, Jr. (Marks & Harrison, on brief), for appellant.

Steven L. Myers, Assistant County Attorney (Steven L. Micas, County Attorney, on brief), for appellee.

OPINION

**COLE, J.**—Betty L. Thore appeals the decision of the Industrial Commission which found that her injury did not arise in the course of her employment. We conclude that her injury did arise in the course of her employment, and we reverse.

The claimant, Betty Lee Thore, worked for twelve years as a deputy sheriff for Chesterfield County, attaining the rank of sergeant. She was appointed by the Sheriff of Chesterfield County as a deputy under the provisions of Code § 15.1-48, providing for the

appointment of deputies to discharge any of the official duties of the principal during his continuance in office. As a deputy, Thore took the oath of office required by Code § 49.1 that she would faithfully and impartially discharge to the best of her ability all the duties imposed upon her.

During the time of the events of this case, according to the uncontroverted evidence in the record, Thore worked half a day in the office and half a day on the road. Her duties included maintaining the county jail, serving civil processes, and law enforcement. All the deputies gave tickets, worked accidents, transported prisoners, and handled all other emergencies that occurred on the highway. She had the power to issue summonses and to make arrests.

On January 11, 1988, Thore was in a patrol car headed toward the courthouse when she observed a motorist, driving in an erratic manner, run two people off the road. She activated her siren, put on her emergency lights and pulled him over. The motorist, Mark Van Epps, was intoxicated. Thore called for backup assistance and Officer Southworth reported. Thore, as arresting officer, issued a summons to Van Epps for driving under the influence of intoxicants in violation of Chesterfield County Ordinance § 14.1-1; Southworth arrested him for resisting arrest and for possession of drugs found in the vehicle. All were returnable to Chesterfield General District Court on January 22, 1988. On the return date, the drunk driving charge was continued to February 22, 1988. The record does not disclose the disposition of the other two charges. On February 22, 1988, the DUI charge was continued to April 25, 1988.

On April 13, 1988, Thore resigned her position as a deputy sheriff, effective April 8, 1988. According to her testimony before the hearing officer, she met with her supervisor, Captain A. H. Horner, and asked him what she was to do about her court dates. He responded that he had nothing to do with it, that it would be up to the Commonwealth's attorney, and that she would have to contact him. According to the testimony of Captain Horner, she mentioned to him a DUI case and he advised her to contact the Commonwealth's attorney.

Following Captain Horner's instructions, Thore contacted the assistant Commonwealth's attorney who was handling the Van

Epps case. According to his testimony before the hearing officer, "it [her testimony] would be absolutely essential. We could not prosecute a drunk driving case without the arresting officer." He further testified that he told Thore that, because of the unusual facts in the case, he needed her to come to court in her capacity as arresting officer. Finally, he testified that Thore was under a legal duty to appear on February 22, 1988. He said that had she not appeared, the trial judge would have issued a show cause order requiring her to appear and show cause why she should not be held in contempt for her failure to appear.

The record establishes that Captain Horner told Thore that, in accordance with the Sheriff's Department policy, she would have to turn in her weapon, I.D., badge, uniform; everything had to be turned in. She did in fact turn in all of these items, but was permitted to keep her warrant arrest books and field notes to use in the Van Epps case.

On April 25, 1988, the Van Epps case was called in the Chesterfield County General District Court and Thore appeared as the arresting officer on behalf of Chesterfield County. Defense counsel moved for another continuance, which was granted. The judge asked defense counsel and Thore to go to another courtroom and ascertain the available trial dates of Officer Southworth. In route to an adjoining courtroom for this purpose, Thore slipped and fell, giving rise to the events leading to this workers' compensation case.

The issue in this case is whether Thore's slip and fall accident on April 25, 1988, arose out of and in the course of her employment. Thore contends that it did and is compensable. The employer contends that it did not and is not compensable. The Industrial Commission held that the accident did not arise in the course of the employment and denied compensation. The commission did not address the issue whether the accident arose out of the employment.

■ Code § 65.1-7 defines a compensable accidental injury as one "arising out of and in the course of the employment." The expressions "arising out of" and "in the course of" are used conjunctively and are not synonymous; both conditions must be satisfied before compensation can be awarded. *Southern Motor Lines Co. v. Alvis*, 200 Va. 168, 170, 104 S.E.2d 735, 737 (1958);

*Dreyfus & Co. v. Meade*, 142 Va. 567, 569, 129 S.E. 336, 337 (1925).

In denying compensation, the Industrial Commission found that Thore appeared in court on April 25, 1988, as a voluntary witness for the prosecution and that her relationship with the county and the court was no different than that of any other citizen. The commission also found that the record showed that the claimant ceased any responsible connection with the Sheriff's Department on April 8, 1988. Therefore, the commission held that the claimant was not injured "in the course of" employment as a deputy sheriff. We disagree with this analysis.

■ The phrase "in the course of" employment refers to

the time, place and circumstances under which the accident occurred. [A]n accident occurs in the "course of employment" when it takes place within the period of employment, at a place where the employee may be reasonably expected to be, and while he is reasonably fulfilling the duties of his employment or is doing something which is reasonably incidental thereto.

*Conner v. Bragg*, 203 Va. 204, 208, 123 S.E.2d 393, 396 (1962)(citations omitted); *see Brown v. Reed*, 209 Va. 562, 564, 165 S.E.2d 394, 396 (1969). However, an employee is deemed to be within the course of employment for a reasonable period while he winds up his affairs. 1A A. Larson, *Workman's Compensation* § 26.10 (1989). What constitutes a reasonable period to wind up affairs depends upon the particular job. Among the factors to be considered are custom and whether the employee's activity bore any relation to his or her employment or was purely personal. *See* A. Larson, *supra* at § 26.10. In the majority of cases, a reasonable period will be the time it takes to gather personal belongings or to pick up a pay check.

■ In this case, the claimant was a deputy sheriff, a sworn public official. As all such officers do, Thore took an oath to the Chesterfield County Sheriff's Department and the Commonwealth of Virginia to enforce the laws of the county and state. The terms of her employment were different from a typical employer-employee relationship. Law enforcement officers, as public officials, are distinguishable from ordinary employees in view of the gravity of

their responsibilities and range of their discretion. *See* A. Larson, *supra* at § 56.20. A law enforcement officer is charged with the public duty of exercising his authority in different places, including his home, and at various times, including evening hours. In *Graybeal v. Board of Supervisors of Montgomery County*, 216 Va. 77, 216 S.E.2d 52 (1975), the Supreme Court recognized the "atypical circumstances" of a public officer who is involved in law enforcement. *See Grand Union Co. v. Bynum*, 226 Va. 140, 144-45, 307 S.E.2d 456, 458 (1983). By virtue of her employment, Thore was in a unique position and had a special responsibility to her employer.

■ Thus, in determining what is a reasonable period for a law enforcement officer to conclude his or her affairs, we turn to the modified rule announced in *Graybeal*:

> A modified rule is permitted, we believe, by the statutory language "arising . . . in the course of the employment." An appropriate rule, limited in application, can be fashioned within the statutory language merely by shifting the emphasis . . . to the statutory word "arising" and giving it the ordinary meaning of "originating." Under this rule, the claimant's injury would be held to have arisen in the course of his employment *if it originated in the course of the employment.*

216 Va. at 79-80, 216 S.E.2d at 54 (emphasis added). The "in the course of" requirement is satisfied by a showing an unbroken course beginning with work and ending with injury under such circumstances that the beginning and the end are connected parts of a single work-related incident. *Id.*

Turning to whether Thore's presence in the courtroom on April 25, 1988, was a reasonable winding up of affairs, we first inquire whether her injury originated in the course of her employment. Once a law enforcement officer arrests a person, he or she automatically acquires the obligation to follow through with the process that has been set in motion. Part of the follow-up is to participate in the ensuing judicial procedures. Thore arrested Van Epps on January 11, 1988. In following through with her obligations as arresting officer, she appeared in court on January 22, 1988, and February 22, 1988, during the period of her employment. When she appeared in court on April 25, 1988, after her resignation, she was still following up and winding up the Van

Epps case. Her obligation to be in the courtroom on April 25, 1988, originated when she arrested Van Epps on January 11, 1988. Her courtroom presence had its genesis during her employment since she arrested Van Epps while she was formally employed by Chesterfield County.

The next inquiry, as suggested in *Graybeal*, is whether there was continuity of time, space and circumstances between the work and the injury. This factor is established by showing an unbroken course beginning with work and ending with injury under such circumstances that the beginning and the end are connected parts of a single work-related incident. 216 Va. at 80, 216 S.E.2d at 54. The course from Thore arresting Van Epps to her courtroom appearance in the case constitutes a single work-connected incident. Her courtroom appearance was the end product of a course set in motion at the time of arrest. Since she was the arresting officer, it was a reasonable part of winding up her affairs for her to be present and available to testify when Van Epps was prosecuted.

Moreover, Chesterfield County had a substantial public interest in Thore following through with her obligations in connection with the Van Epps case. Van Epps had been charged with violating the Chesterfield County drunk driving ordinance. Thore, acting as the arresting officer, made the decision that there was probable cause to arrest Van Epps and to bring him to trial. She made this decision on behalf of the county, subjecting both herself and the county to civil liability for any error. *See* Code § 15.1-66.3. Thus, it was important to the county that this case be handled in a proper manner. No one could replace her as a witness; she had information concerning the arrest to which no one else could testify. Thore's presence in the courthouse along with all her other actions in connection with the Van Epps case was for the sole benefit of Chesterfield County; she had no personal stake in the outcome of the trial. Thus, Thore's presence in the courthouse was in furtherance of her employer's affairs.

Contrary to the Industrial Commission's analysis, Thore was not like any other citizen called to testify in a criminal matter. She was a public official, analogous to the Commonwealth's attorney in *Graybeal*. In finding that Thore was reasonably winding up her affairs, we emphasize that not only did Thore have a public duty to testify, she also was following the directions of her former supervisor when she contacted the Commonwealth's attor-

ney's office concerning her presence in court. If an employee is obeying the orders of his or her supervisor, though what he or she is called upon to do is outside the sphere of the original employment, the employee is still in the course of his employment. A. Larson, *supra* at § 9.39. Not only did Thore's supervisor tell her to contact the Commonwealth's attorney's office, but the supervisor permitted Thore to retain her warrant arrest book and field notes. These department issued items were the county's property, to which a private citizen would not have access.

Taking into account that the Act is to be liberally construed, *Race Fork Coal Co. v. Turner*, 5 Va. App. 350, 354, 363 S.E.2d 423, 425 (1987); *City of Waynesboro v. Harter*, 1 Va. App. 265, 269, 337 S.E.2d 901, 903 (1985), we agree with the deputy commissioner that Thore's sense of civic responsibility and loyalty to her former employer, as well as the public policy of enforcing the laws of the Commonwealth and Chesterfield County required her presence at the Van Epps trial. In concluding her affairs at the courthouse as the arresting officer in the Van Epps case, Thore was acting in the course of her employment. For these reasons, we reverse. Since the commission did not decide the issue whether Thore's injury arose out of her employment, we also reverse and remand for the commission to decide this issue.

*Reversed and remanded.*

Benton, J., and Willis, J., concurred.