KRAF CONSTRUCTION SERVICES, INC.
AND
INSURANCE COMPANY OF NORTH AMERICA

v.

STEVEN J. INGRAM

No. 0731-92-4

Decided November 16, 1993

COUNSEL

William B. Judkins (Midkiff & Hiner, P.C., on brief), for appellant.

Walter S. Boone, III (Anderson & Corrine, on brief), for appellee.

OPINION

**MOON, C. J.**—Steven J. Ingram, appellee, was struck by an automobile while crossing a highway to get a soft drink. His employer, Kraf Construction Services, Inc., appellant, contends that the accident did not occur in the course of or arise out of the employment. We disagree and affirm the award because the accident occurred while the employee was seeking to satisfy his thirst during a trip in which the employer provided transportation to and from a work site away from the employer's premises. *Kent v. Virginia-Carolina Chem. Co.,* 143 Va. 62, 66, 129 S.E. 330, 331-32 (1925).

Kraf Construction Services, Inc., employer, performs general construction work in the landscaping business. Kraf's employees report to work at the company lot in Nokesville, Virginia at approximately 6:30 a.m. and are transported to various job sites and then back to the company lot at the end of the work day. The personal vehicles of the employees are left at the Nokesville lot. The employer pays for the company trucks and tools, and provides transportation for the employees

during the work day. The employees are paid from the time they arrive at the Nokesville lot until they leave the job site at the end of the day.

On March 1, 1990, Ingram drove the employer's truck to the job site of Mill Pond subdivision. When the tasks on the site were completed, the employees each carried one load of tools and equipment to the truck. A factual dispute exists as to whether the employment for the day was at this point completed. Ingram and other employees testified that some work material, fence material and bundles of stakes still needed to be loaded.

Fogle, a supervisor and an owner of Kraf Construction, testified that employees are off the clock and technically free to leave directly from the job site after loading the truck. According to Fogle, at the time of the accident the work for the day was complete and the crew was on the way back to the Nokesville lot. In reality, the employees always rode the employer's truck back to the Nokesville lot. Fogle also testified that Ingram had not finished his time sheet for that day, March 1, 1990. According to Eaton, a crew member, they were all still on the clock, because the truck was not completely loaded.

Ingram testified that it was his understanding that he had to return to the lot at the end of each work day and was required to drive the employer's truck. Each day the crew finished loading the trucks, Ingram drove one of the trucks back to the Nokesville lot. Various employees also testified that work activity was regularly conducted back at the company at the end of the day. The work included filling out time sheets, picking up paychecks and turning in invoices.

Prior to leaving the job site for the Nokesville lot, the employees customarily obtained refreshments on a regular, authorized basis at a nearby High's Convenience Store. On the day of the accident, Fogle drove his truck from the Mill Pond subdivision approximately 100 to 200 feet to the commuter lot, which was on the same side of the street as the subdivision. Ingram drove himself and other crew members down the Davis Ford Highway to the same area across from High's Convenience Store. The distance between the commuter lot, on one side of the highway where the trucks were parked, and the High's store on the opposite side of the highway, was approximately thirty to forty yards. The crew decided to walk across the highway instead of driving the truck into the parking lot because of the lack of parking and the difficulty leaving High's parking lot onto the highway. The four-man team crossed the highway halfway. Three stopped but Ingram pro-

ceeded across the other half and was struck by a vehicle and severely injured.

The commission failed to resolve the conflict in the evidence as to whether Ingram had actually finished work and that the accident occurred during a trip back to the company lot or whether there was still work to be done and the accident occurred during a rest break. The commission found, instead, that in either event Ingram was entitled to compensation. We agree for reasons herein stated.

■ "Where an employee is required to go to outside places to work and to return to the employer's office to report, he is at all such time acting in the course of his employment, and is entitled to compensation if injured by accident at such time." *Taylor v. Robertson Chevrolet Co.,* 177 Va. 289, 293, 13 S.E.2d 326, 328 (1941). When an employee is required to travel away from the employer's premises to perform his work and the employer furnishes transportation to the employee, the course of one's employment is usually expanded to include travel to and from the work site and the activities reasonably incidental thereto. *Boyd's Roofing Co. v. Lewis,* 1 Va. App. 93, 94-95, 335 S.E.2d 281, 282 (1985). *See also Virginia Polytechnic Inst. v. Wood,* 5 Va. App. 72, 78, 360 S.E.2d 376, 380 (1987).

We hold that, regardless of whether the work had in fact been finished and the employees were on their way back to the Nokesville lot or whether they were merely on a rest break, the accident occurred during the course of the employment. So long as Ingram had not so deviated from the employment as to be deemed "on a frolic of his own," the accident is considered to arise out of his employment. *Taylor,* 177 Va. at 295, 13 S.E.2d at 329.

There is no dispute that if Ingram had driven the truck across the road to the High's store and the truck had been struck and Ingram was injured, the injury would be deemed to have risen from the employment. Kraf argues that because Ingram was out of the truck and attempting to satisfy his thirst away from the employer's premises, the accident did not arise out of the employment. In so arguing, Kraf misapplies the personal comfort doctrine as it applies to an accident that occurs during work on the employer's premises as opposed to an accident that occurs during a trip to or from an off-premises job site in which the employer provides transportation.

■ Quenching one's thirst in a conventional manner at a place the employee is expected to be is considered incidental to the employment

and, thus, cannot be considered "a frolic of the [employee's] own." Indeed, Virginia has adopted the "personal comfort" doctrine, under which an employee who seeks to satisfy his personal comfort, such as seeking to quench his thirst at a place provided by the employer, is within the employment. In *Bradshaw v. Aronovitch,* 170 Va. 329, 196 S.E. 684 (1938), the Supreme Court held:

> "An injury sustained by an employee while in the act of satisfying his thirst ordinarily arises 'out of' and 'in the course of' the employment," provided the employee uses the facilities furnished to him by the employer, or does not depart from the employer's premises, or go to some place thereon where he has no right to be.

*Id.* at 336-37, 196 S.E. at 687 (citation omitted).

█ It is true that if the employer provides the employee a satisfactory place to satisfy his personal comfort, the employee must use that place or risk the loss of compensation. However, when, as here, the employee is traveling and no such place to satisfy the employee's personal comfort is provided, a different rule applies. *See Taylor,* 177 Va. at 295, 13 S.E.2d at 329. The question is whether the activity of quenching one's thirst is incidental to the travel or employment or a "frolic" of one's own. That question was answered in two Supreme Court cases. In *Bradshaw,* the Court held:

> Such acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are *incidental* to the service, and injury sustained in the performance thereof is deemed to have arisen out of the employment. A man must breathe and occasionally drink water while at work. In these and other conceivable instances he ministers unto himself, but in a remote sense these acts contribute to the furtherance of the work.

170 Va. at 337, 196 S.E. at 687 (emphasis added).

In *Scott v. Willis,* 150 Va. 260, 142 S.E. 400 (1928), the Court held:

> [Although normally] an employee while on his way to work is not in the course of his employment . . . where the workman is employed to work at a certain place, and as a part of his contract of employment there is an agreement that his employer shall furnish him free transportation to or from his work, the period of

service continues during the time of transportation, and if an injury occurs during the course of transportation it is held to have arisen out of and in the course of the employment.

*Id.* at 265, 142 S.E. at 401.

Ingram sought to satisfy his thirst, an activity within the course of his employment. He did so during a period of time in which the employer provided transportation. Highs Market was selected by his supervisor, who was also one of the owners of Kraf. Even the hazard of having to cross the street on foot was selected by the employer through Fogle, the supervisor. Ingram was seeking to satisfy his personal comfort during the course of his employment at a place known to and constructively approved by his employer. The street was a hazard of the employment. *See Park Oil Co. v. Parham,* 1 Va. App. 166, 170, 336 S.E.2d 531, 534 (1985). Because we find the hazard causing Ingram's injury was a risk of his employment, the injury is compensable and the award is affirmed.

*Affirmed.*

Barrow, J., concurred.

Koontz, J.,* dissenting.

I respectfully dissent. In my view, Ingram failed to establish that his injury arose out of an actual risk of his employment with Kraf. In addition, on the facts established, I disagree with the majority's conclusion that the "personal comfort doctrine" extends compensability to Ingram's claim.

Because the specific conditions and duties of employment vary from job to job, the specific facts of each case necessarily control the compensability of an injury asserted by the employee to flow from the employment. *See Sentara Leigh Hosp. v. Nichols,* 13 Va. App. 630, 633-34, 414 S.E.2d 426, 428 (1992) (en banc). Although the commission did not resolve certain conflicts in the evidence, the critical facts in the record upon which Ingram's claim is asserted are not in dispute.

Kraf employed Ingram as a laborer. The established duties of his employment required that he load Kraf's trucks with appropriate tools and equipment for the day's work at the company lot and perform

---

*When the case was argued, Judge Koontz presided. Judge Moon was elected Chief Judge effective May 1, 1993.

tasks as a laborer on the job site away from the company lot. Kraf provided transportation to Ingram in its company truck to and from the job site on the day of his accidental injury. Ingram completed his work assignment at the job site, and his compensation ended at that time. Ingram, two co-workers and Roger Fogle, an owner and supervisor of Kraf, then decided to stop at High's, a public convenience store located a short distance away on Davis Ford Road and on the opposite side of it from the job site, to get soft drinks. Stopping for refreshments on return trips to the company lot was a frequent practice of Kraf's employees, and one Kraf did not prohibit.

On this particular occasion in order to reach High's on the north side of Davis Ford Road, Fogle drove one company truck to a public commuter lot on the south side of this roadway. Ingram and his co-workers followed in a second truck and parked it near Fogle's truck in this lot. By agreement,[1] the group then voluntarily departed from the trucks and proceeded to walk across the roadway toward High's, where they intended to obtain soft drinks before returning to the company lot in Kraf's trucks. While walking across the roadway, Ingram was struck by an oncoming motor vehicle and was severely injured.

Upon these facts, the commission, with Chairman James filing a concurring opinion on different grounds, found that "[Ingram was] still in the scope of [his] employment at the time [he] stopped for drinks at High's." Relying primarily upon an analogy it drew with the decision of our Supreme Court in *Lucas v. Lucas*, 212 Va. 561, 186 S.E.2d 63 (1972), the commission noted that, although Ingram's compensation ended when the trucks were loaded at the job site and

---

[1] The parties agree that the large company truck in which Ingram was riding made it difficult to drive it onto High's lot. Moreover, they agree that a right turn from the commuter lot onto Davis Ford Road rather than a left turn across traffic from High's lot facilitated the return to the company lot. Thus, they agree on the reason for parking in the commuter lot rather than parking at High's.

In its findings of fact, however, the commission noted but did not resolve the varying accounts given by Ingram's co-workers and Fogle concerning the discussion by the group that led to the agreement to go to High's for soft drinks. Because of his injuries, Ingram was unable to recall these events. One co-worker testified that "Fogle asked the men if they wished to stop at the store to get soft drinks." The other testified that "there was simply a general discussion" among the group about making this stop. Fogle testified that he had only said "he was going to High's but did not instruct the other men to follow him there, nor to stop and get drinks."

All accounts support the commission's conclusion that there was a voluntary and authorized decision to walk across the roadway for the purpose of obtaining soft drinks before returning to the company lot.

Ingram was not required to cross the roadway with the other men to get a drink, there were "remaining duties to perform for [his] employer." Identified duties were that the trucks had to be returned to the company lot[2] and Ingram "had no other means of transportation from the work site [to the company lot]." The commission then concluded:

> The risk of injury while returning to the employer's premises was, therefore, part of the risk of the employment. Certainly, had [Ingram] been injured in a motor vehicle accident while returning to his employer's shop, there would be no question regarding compensability. Here, there was no deviation from the work inasmuch as [Ingram was] accompanying [his] supervisor on a customary stop at the end of the work day to get soft drinks before returning to the employer's premises.

Ingram, however, was not injured in a motor vehicle accident while traveling in his employer's truck back to the company lot from the job site. Rather, he was injured after voluntarily departing from that truck and while walking across a public roadway on a personal errand. The majority opinion of the commission gives no apparent significance to this undisputed fact other than its reference that "there was no deviation from the work inasmuch as [Ingram was] accompanying [his] supervisor on a customary stop at the end of the work day to get soft drinks before returning to the employer's premises." Obviously, going to High's was a deviation from the route between the job site and the company lot. The significance of that deviation is the critical issue to be resolved. The employer is not an insurer against all accidental injuries that might happen to an employee while in the course of the employment. *See Richmond Memorial Hosp. v. Crane,* 222 Va. 283, 286-87, 278 S.E.2d 877, 879 (1981).

Moreover, a determination that Ingram's injury arose "in the course" of his employment with Kraf does not resolve whether that injury also arose "out of" that employment. The conclusion that "[t]he risk of injury while returning to the employer's premises was, there-

---

[2] The parties do not agree and the commission left unresolved whether Ingram was the driver or a passenger in the second truck. Although a determination that Ingram was the driver would have supported a conclusion that he had a duty to return the truck to the company lot, that fact left unresolved does not lessen the validity of the conclusion that Ingram had no other means of transportation from the work site to the company lot. Moreover, for the reasons that will become apparent, whether Ingram was the driver of or a passenger in the company truck is not dispositive to the analysis of this appeal. Clearly, Kraf provided transportation to Ingram both to and from the work site.

fore, part of the risk of the employment" is valid only if that risk meets the actual risk test, applied in this Commonwealth, rather than the positional risk test. *See, e.g., Hill City Trucking, Inc. v. Christian,* 238 Va. 735, 385 S.E.2d 377 (1989). Thus, where, as here, the commission does not specifically address the factual basis upon which it determines that the employee has established both of the separate and distinct statutory requirements for compensability of the claim, we must review the record to determine that the commission's conclusions are not the result of an impermissible blending together of these familiar but distinct concepts. *See generally County of Chesterfield v. Johnson,* 237 Va. 180, 181-82, 376 S.E.2d 73, 74 (1989).

Chairman James' opinion reflects a different analysis and focus. Chairman James first concluded that at the time of Ingram's accidental injury Ingram had "a duty, if not by specific instructions from the employer, then by common practice through the employer's method of operation" to drive the company truck back to the company lot. Alternately, this commissioner concluded that "if [Ingram] was not entrusted with a duty to return the employer's truck to its premises, then the employer was providing transportation back to its premises" and such "is an exception to the going and coming rule placing [Ingram] in the course of his employment." Neither of these conclusions resolves the compensability of Ingram's claim. Even assuming that the fact that Ingram was injured after departing *from* the truck that he had a duty to return or was the means of transportation provided by Kraf does not take the injury outside the "in the course of the employment" requirement, the "arising out of" requirement is, nonetheless, left unresolved. Finally, relying upon the "personal comfort doctrine" recognized in *Bradshaw v. Aronovitch,* 170 Va. 329, 196 S.E. 684 (1938), Chairman James would find Ingram's claim compensable because it had become a common practice, and one suggested and participated in by the supervisor, for the employees after work to stop to obtain a drink to quench their thirst and "this personal comfort aspect resulted in a benefit to the employer."

On appeal, the majority here adopts a different analysis. After concluding that Ingram's injury arose in the course of his employment, the majority then concludes that because Ingram was not on a "frolic of his own" in seeking to quench his thirst at a place "known to and constructively approved by his employer," the hazard of walking across the public roadway was a risk of his employment and, thus, Ingram's injury also arose out of his employment and his injury is compensable. The majority relies primarily upon *Taylor v. Robertson*

*Chevrolet Co.,* 177 Va. 289, 13 S.E.2d 326 (1941); *Bradshaw v. Aronovitch,* 170 Va. 329, 196 S.E. 684 (1938); and *Scott v. Willis,* 150 Va. 260, 142 S.E. 400 (1928), to reach the conclusion that Ingram's injury arose out of the employment. For the reasons that follow, in my view, the analysis of the commission and the panel majority are fatally flawed. Both have impermissibly blended together the distinct concepts of "in the course of" and "arising out of" the employment and effectively made the employer in this case an insurer against all accidental injuries that might happen to an employee while in the course of the employment.

Where, as here, the employee's accidental injury occurs at a place other than the employer's premises or the work site and from a risk common to all users of the public roadways, it is difficult to reconcile all of the reported cases involving this general factual scenario. The difficulty in such cases, as reflected by the differing opinions of the commissioners and the majority, in large part is created simply by the fact that the employee is necessarily in motion from one place to another. In that process and at specific points in time and place, the employee may move in and out of the course of the employment. Similarly, in that process the risk of use of or presence in the public roadway, such as an injury from being struck by a motor vehicle, to which the employee is subjected may remain constant, but such risk will not always comport with the actual risk test necessary to meet the requirement that the injury arise out of the employment. In sum, although the statutory requirements of an injury "arising out of and in the course of" the employment are separate and distinct concepts, each must coalesce at the precise time and place of the injury to establish the compensability of a particular claim. It is with this focus that I begin my analysis in this appeal.

The risk of an impermissible blending together of the "arising out of" and the "arising in the course of" requirements for compensability of Ingram's claim is readily apparent from the established facts in this record. As suggested by the commission and noted by the majority, had Ingram been injured in a motor vehicle accident while returning to Kraf's company lot *in the company truck* there would be no question that his injury would be compensable. Injury in a motor vehicle accident is a well established and textbook example of an actual risk arising out of travel on a public roadway. Although no facts in the record support a conclusion that Ingram had a duty to return the truck to the company lot, it is readily apparent that for its own convenience or because of the location of the work site, Kraf provided transporta-

tion to Ingram in its company truck to and from the work site. Kraf does not contend that the general route followed along Davis Ford Road was not an appropriate and direct route between the job site and the company lot. Accordingly, had Ingram been injured in a motor vehicle accident while traveling in the company truck along that route, his injury would have also arisen in the course of his employment. *See Provident Life & Accident Ins. Co. v. Barnard,* 236 Va. 41, 47, 372 S.E.2d 369, 372-73 (1988); *Kendrick v. Nationwide Homes, Inc.,* 4 Va. App. 189, 190-91, 355 S.E.2d 347, 347-48 (1987) (addressing the transportation exception to the "going and coming rule").

However, the mandate that the "statutory language, 'arising out of and in the course of the employment,' should be liberally construed to carry out the humane and beneficial purposes of the Act" does not permit us to resolve the compensability of Ingram's claim on hypothetical facts not supported by the record. *See Baggett Transp. Co. v. Dillon,* 219 Va. 633, 637, 248 S.E.2d 819, 822 (1978). Simply put, Ingram was not injured in a motor vehicle accident involving the mode of transportation provided to him by Kraf. The undisputed fact that Ingram was injured by a motor vehicle while he was walking across a public roadway on a personal errand is the critical fact that controls the analysis of whether his injury arose out of and in the course of his employment with Kraf. Specifically, for reasons that will become apparent, it is the lack of the "arising out of" an actual risk, rather than a positional risk, requirement that is fatal to Ingram's claim.

The phrase "in the course of employment" has a well established meaning. It refers to the time, place and circumstances under which the accident occurred.

> "[A]n accident occurs in the 'course of employment' when it takes place within the period of employment, at a place where the employee may be reasonably expected to be, and while he is reasonably fulfilling the duties of his employment or is doing something which is reasonably incidental thereto."

*Thore v. Chesterfield County Bd. of Supervisors,* 10 Va. App. 327, 331, 391 S.E.2d 882, 888 (1990) (quoting *Conner v. Bragg,* 203 Va. 204, 208, 123 S.E.2d 393, 396 (1962)).

Kraf argues that Ingram's injury did not occur in the course of his employment. However, because resolution of this appeal turns upon the application of the "arising out of" requirement, we may assume

without deciding that Ingram met the "in the course of" requirement for compensability of his claim. Compensable injuries are not confined to strictly working hours of the employee. *See, e.g., Briley v. Farm Fresh,* 240 Va. 194, 396 S.E.2d 835 (1990); *Honaker & Feeney v. Hartley,* 140 Va. 1, 124 S.E. 220 (1924); *Kim v. Sportswear,* 10 Va. App. 460, 393 S.E.2d 418 (1990). Ingram's injury occurred on a public roadway upon which he was reasonably expected to travel to afford himself of the transportation provided by his employer to and from the work site. Although he was not fulfilling a specific duty of his employment when injured, *for purposes of determining the "in the course" of the employment requirement* his deviation from the route to the company lot for a soft drink may be considered reasonably incident to the duties of his employment[3] or simply a deviation of no moment. *See generally Taylor,* 177 Va. 289, 13 S.E.2d 326 (1941). Thus, I agree with the conclusion that Ingram's injury occurred within the period of his employment.

For purposes of this appeal, however, further analysis of the in the course of the employment requirement is unnecessary. Rather, the determination of whether Ingram's injury also arose out of his employment is required. This is required because "Virginia is not a 'positional risk' jurisdiction in which an accident is compensable solely because it arises in the course of employment. Virginia is an 'actual risk' jurisdiction in which an accident, to be compensable, must also arise out of the employment." *Mullins v. Westmoreland Coal Co.,* 10 Va. App. 304, 306, 391 S.E.2d 609, 611 (1990).

The phrase "arising out of the employment" has a well established meaning. An injury arises out of the employment

> *"when there is* apparent to the rational mind upon consideration of all the circumstances, *a causal connection between the conditions under which the work is required to be performed and the resulting injury.* Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the

---

[3] Under the facts of this case, it is reasonable to conclude that it was a customary practice of Kraf to permit its employees to stop for refreshments after the day's work on the return trip to its company lot. Such a practice undoubtedly exhibited consideration for the employees' reasonable desire for refreshments after a day's work and promoted goodwill toward Kraf. Such was at least an indirect benefit to Kraf and, thus, incidental to the duties of the employment. *Cf. Ablola v. Holland Road Auto Center, Ltd.,* 11 Va. App. 181, 397 S.E.2d 541 (1990).

employment, then it arises out of the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger . . . must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

*Baggett Transp. Co.,* 219 Va. at 637-38, 248 S.E.2d at 822 (quoting *Bradshaw,* 170 Va. at 335, 196 S.E. at 686) (citation omitted) (emphasis added).

Applying this definition of arising out of the employment to the facts in Ingram's case under the "positional risk test," a causal connection is established between Ingram's employment with Kraf and his injury. The causal connection is established under that test by the fact that Ingram would not have been injured on Davis Ford Road on the day in question *but for* the fact that his employment with Kraf placed him in the position where he was injured. As noted, the commission did not specifically address the arising out of requirement and apparently concluded that if Ingram was in the course of his employment his injury necessarily also arose out of it. However, the application of the "actual risk test" requires an examination of the character, nature and particular conditions and duties of Ingram's specific employment to determine whether the risk of injury from a motor vehicle while he was walking across Davis Ford Road was an actual risk of Ingram's employment with Kraf. *See generally Hill City Trucking, Inc.,* 238 Va. 735, 385 S.E.2d 377; *Immer & Co. v. Brosnahan,* 207 Va. 720, 152 S.E.2d 254 (1967); *Cohen v. Cohen's Dep't Store, Inc.,* 171 Va. 106, 198 S.E. 476 (1938); *Dreyfus & Co. v. Meade,* 142 Va. 567, 129 S.E. 336 (1925).

The resolution of whether Ingram's injury arose out of his employment under the actual risk test does not lend itself to a simple one-step analysis. Initially, it is clear that Ingram was not among an accepted class of employees, such as salesmen, truck drivers, messengers, or solicitors whose duties to their employers require their presence upon the streets, either frequently or continuously. *See Dreyfus & Co.,* 142 Va. at 576, 129 S.E. at 338. Ingram performed his duties to Kraf as a laborer at the company lot and job site and was not required to be pre-

sent upon the public streets to perform his duties. Consequently, the character and nature of his employment did not establish a causal connection between his employment and his injury. *See Sentara Leigh Hosp.,* 13 Va. App. at 635 n.1, 414 S.E.2d at 429 n.1 (clarifying that even where the employee does not prove that he is within a class of employees whose duties require their presence or travel upon public streets, a single venture onto the streets, if proven to be on a mission of the employment, gives rise to compensation when the employee is injured in an automobile accident).

Consequently, the particular conditions and duties of Ingram's employment and the established reasons and purposes for his presence on Davis Ford Road determine whether a causal connection exists between them and the risk of injury from being struck by a motor vehicle. The compensability of Ingram's claim and, specifically, the requisite causal connection between his employment and his injury is not defeated simply by the fact that he was not performing some task as a laborer while walking across Davis Ford Road. The necessary causal connection does not require that his injury "'result directly and immediately from the performance of work for which [he] was employed.'" *Immer & Co.,* 207 Va. at 724, 152 S.E.2d at 257 (citation omitted). The actual risk test is not so restricted.

In this context, it is clear that Ingram's presence on Davis Ford Road in Kraf's truck was solely because Kraf provided transportation to him between the company lot and the job site. The risk of injury from a motor vehicle accident while riding in Kraf's truck was an actual risk, that is, one causally related to that process. However, it cannot logically be said that Ingram's voluntary departure from the company truck and exposure to the obvious danger of walking across Davis Ford Road on a personal errand was reasonably contemplated as a part of the provision of transportation by Kraf to Ingram. Thus, the actual risk of injury to Ingram from a motor vehicle accident in the process of being transported to and from work did not include the risk of injury from being struck by a motor vehicle while walking across Davis Ford Road on a personal errand.

When an employee chooses to go to a dangerous place where his employment does not necessarily carry him, and incurs dangers of his own choosing which are altogether outside of any reasonable requirement of his position, the risk arising from such action is not incident to and does not arise out of the employment.

*Conner,* 203 Va. at 209, 123 S.E.2d at 397. *See also Norfolk & Washington Steamboat Co. v. Holladay,* 174 Va. 152, 158, 5 S.E.2d 486, 489 (1939). Ingram voluntarily chose to walk across Davis Ford Road and incurred the obvious risk of injury from being struck by a motor vehicle at that place and in that process. His employment with Kraf did not require his presence in the place where he was injured. He was on a personal errand and not performing any duty or requirement of his employment. Under such circumstances, the risk of injury from being struck by a motor vehicle was not incident to and did not arise out of his employment, because this particular risk was not an actual risk of his employment with Kraf.

Our Supreme Court's decision in *Lucas v. Lucas,* 212 Va. 561, 186 S.E.2d 63 (1972), does not resolve Ingram's case, and the commission's reliance upon it is misplaced. In that case, Lucas was injured in a motor vehicle accident while driving his employer's truck on a public roadway to pick up checks for his employer at a location away from the job site. Lucas' working hours had ended, and the trip was entirely voluntary. However, because Lucas volunteered to make the trip, his employer was able to continue working at the job site and did not have to send another employee to pick up the checks. The Court noted that neither the fact that Lucas' working hours had ended nor the fact that his trip was voluntary defeated the compensability of his claim. Rather, the Court, applying the actual risk test, found that: "When [Lucas] was fatally injured he was at a place he was reasonably expected to be while engaged in an activity incidental to his employment. . . . He was not on a mission of his own wholly unconnected with his employment." *Id.* at 564, 186 S.E.2d at 65. In *Lucas,* the causal connection between the employment and the injury to the employee is clear. Lucas was traveling on the public roadway on a mission for the benefit of his employer and, thus, was at a place that subjected him to the risk of injury from a motor vehicle accident. Ingram, in contrast, was on a wholly personal errand and voluntarily subjected himself to the risk of injury from a motor vehicle at the place where he was injured.

Similarly, the majority's reliance upon *Taylor* to conclude that "so long as Ingram had not so deviated from the employment to be deemed 'on a frolic of his own' the accident is considered to arise out of his employment" is misplaced. In *Taylor,* the employee slipped and fell on the sidewalk while walking from his apartment to the employer's place of business. The employee had been on duty as an automo-

bile salesman in downtown Richmond earlier in the day and was proceeding to the employer's place of business to continue his night duties there. He had deviated to his apartment to have his dinner. The Court held that the employee's deviation was "too slight to be of moment." *Taylor,* 177 Va. at 298, 13 S.E.2d at 330. The Court reasoned that the employee was required to go from one assignment to another and that he had to eat somewhere before going to work that night. Significantly, however, in *Taylor,* the employee routinely walked from one assignment to another. The risk of walking on the sidewalk was, therefore, an actual risk of his employment. The employee did not subject himself to the risk of being injured by a motor vehicle in the street while on a personal errand. In short, *Taylor* is clearly distinguishable from Ingram's case.

Finally, I turn to Ingram's assertion, and the majority's conclusion, that his injury is compensable under the "personal comfort doctrine." Our Supreme Court has recognized this doctrine in several cases. *See Raven Red Ash Coal Co. v. Griffith,* 181 Va. 911, 27 S.E.2d 360 (1943); *Bradshaw,* 170 Va. 329, 196 S.E. 684. We have applied this doctrine in several cases. *See Ablola,* 11 Va. App. 181, 397 S.E.2d 541; *Jones v. Colonial Williamsburg Found.,* 8 Va. App. 432, 382 S.E.2d 300 (1989), *aff'd en banc,* 10 Va. App. 521, 392 S.E.2d 848 (1990).

In general terms, this doctrine recognizes the human need for periodic rest and refreshment. Thus, an injury sustained by an employee engaged in the performance of an act essential to his personal comfort, such as obtaining a drink or food, but ultimately for the benefit of the employer, is compensable as "arising out of and in the course of" the employment. Obviously, while the employee is in the process of obtaining a drink to quench his thirst, he is not performing a task or duty directly in the furtherance of his employment. The general rationale supporting the compensability of such an injury is that the employer receives a benefit when the personal comfort of the employee is satisfied. That benefit to the employer can be the "enhancing feasibility and desirability of employment, good physical and mental conditioning of its employees, and the cultivation of good employment relationships." *Ablola,* 11 Va. App. at 183, 397 S.E.2d at 543.

The personal comfort doctrine is not without limitations. Thus, in *Bradshaw,* the Court noted that

[a]n injury sustained by an employee while in the act of satisfying his thirst ordinarily arises "out of" and "in the course of" the employment, provided the employee uses the facilities furnished to him by the employer, or does not depart from the employer's premises, or go to some place thereon where he has no right to be.

170 Va. at 336-37, 196 S.E. at 687. Kraf asserts that our Supreme Court in *Bradshaw* has limited the application of the personal comfort doctrine to the premises and facilities of the employer. In contrast, Ingram asserts that no Virginia appellate case holds that the doctrine is not applicable where the work of the employee is performed off the employer's premises or where the employer is "unable" to provide refreshment facilities. Consequently, Ingram asserts that this doctrine is not limited to injuries occurring on the employer's premises and applies where the employee makes an authorized stop for refreshments during his travel in transportation provided by the employer to or from the work site. The panel majority has essentially agreed with Ingram's assertions. However, for purposes of resolving Ingram's case, we need not resolve either of these contrasting assertions.

As a practical matter, the ability of the employer to provide for the safety of the employee is limited when the employee is not on the employer's premises. Moreover, if the personal comfort doctrine were to extend compensation to all cases where the employee is injured while engaged in the performance of an act essential to his personal comfort regardless of the circumstances, the employer would become an insurer against all injuries to its employee in such cases. Thus, in general terms, I would conclude only that this doctrine has no application where the injury occurs off the premises of the employer and at a place or under circumstances *inherently dangerous* to the employee. Ingram's case is an example of such a case.

Ingram was not injured on Kraf's premises. The company truck, when considered as part of a moving fragment of Kraf's premises, was a place under the control of Kraf that did not subject Ingram to the risk of injury from a motor vehicle inherent in the act of walking across Davis Ford Road. Ingram voluntarily left those premises and subjected himself to that risk to satisfy his personal comfort. Thus, regardless of any indirect benefit to Kraf, Ingram voluntarily chose an inherently dangerous place and manner to satisfy his need or desire for personal comfort. In doing so, his voluntary act severed the causal connection between his employment and his injury and is fatal to the

compensability of his claim. *See Dreyfus & Co.,* 142 Va. at 574, 129 S.E. at 338.

The Supreme Court's decision in *Scott v. Willis,* 150 Va. 260, 142 S.E. 400 (1928), relied upon in part by the panel majority, is not applicable to the facts in Ingram's case. Moreover, in my view, it does not support the proposition for which the majority cites it. In *Scott,* the employee was provided transportation between his home and the work site in the employer's truck. At the end of the particular work day, the employee was struck by an oncoming motor vehicle when he departed from the company truck and began to walk across the street to reach his home. The issue was whether the transportation ended when the employee left the truck, that is, whether the injury arose in the course of the employment. Obviously if the employee was still in the scope of the employment as he attempted to cross the street, the risk of injury from a motor vehicle was an actual risk of the employment and the injury also arose out of the employment. The Court held that the employee's journey had not ended the second he left the truck "seeking a safe place on the sidewalk." *Id.* at 266, 142 S.E. at 401. In stark contrast, Ingram was not ending his journey to the company lot or seeking a safe place on the sidewalk to complete that journey. Rather, he voluntarily left the safety of the transportation provided by Kraf and placed himself in an inherently dangerous place for the sole purpose of satisfying his intent to obtain a soft drink for his personal comfort.

In sum, I would hold that Ingram's injury, under the facts established, did not arise out of an actual risk of his employment with Kraf and the personal comfort doctrine does not extend compensability to his claim. For these reasons, I would reverse the decision of the commission.