# Richmond

## DEWEY M. CONNER v. THOMAS M. BRAGG.

January 15, 1962.

Record No. 5368.

Present, All the Justices.

*Felix E. Edmunds* and *Talmage N. Cooley* (*Edmunds, Freed & Cooley*, on brief), for the appellant.

*Humes J. Franklin* and *Fletcher B. Watson* (*Gerald W. Smiley*, on brief), for the appellee.

I'ANSON, J., delivered the opinion of the court.

This appeal brings under review an award of the Industrial Commission finding that Thomas N. Bragg, the claimant, an employee of Dewey M. Conner, the appellant, was injured on June 20, 1960, at the city dump of Waynesboro, Virginia, as a result of an accident arising out of and in the course of his employment when a front-end loader operated by Bragg went out of control and turned over on him. Compensation was awarded Bragg on account of his total incapacity for work.

It appears from the record that at the time of the accident Bragg was employed as an attendant at Conner's gasoline service station, where he had been so engaged for approximately five or six weeks, and he was in charge of the station for several hours each day during Conner's absence. Prior to that time he had been employed for four or five weeks as a truck driver in Conner's hauling, grading and excavating business.

The dump trucks used in Conner's hauling, grading and excavating business were parked in the service station parking lot at the end of each day's work, and all other equipment used in connection with that business was either left at the job site or some location other than at the service station.

The front-end loader which turned over on Bragg had recently been purchased by Conner for use in his hauling, grading and excavating business at his sand and gravel pit and it was delivered to

the service station parking lot late in the afternoon of Saturday, June 18, secured by chains to a "low boy" trailer. The next morning Bragg climbed aboard the front-end loader while it was still chained to the trailer, activated the engine, raised the bucket and severed the log chain which secured the bucket to the trailer. Conner reprimanded Bragg and told him to "get off of it and leave it alone." On the afternoon of the same day Bragg asked Conner to permit him to unload the front-end loader, and in refusing the request Conner told him that he would unload it himself. Thereafter it was unloaded by Conner and left on the service station parking lot.

Sometime in the afternoon of Monday, June 20, Bragg and Conner's young son, in the absence of Conner, cleaned up the service station and placed the trash in a crate. Then Bragg, over the protest of Conner's son, placed the crate on the bucket of the front-end loader, secured it by tying it to the bucket with an old speedometer cable, and proceeded to drive the machine to the city dump.

Bragg had never operated this front-end loader prior to the accident and he was not familiar with its operation. On his way to the city dump he encountered trouble with the machine slipping out of gear and he drove it to the home of one who was familiar with its operation, but who had no connection with either of Conner's businesses, to obtain instructions on how to remedy the trouble. From there he drove to the city dump, and after dumping the trash the machine again jumped out of gear, went out of control, ran down a hill at the dump and turned over on Bragg, causing him serious injuries.

The Commission found that Bragg's lack of knowledge of the operation of the front-end loader made it a dangerous machine in his hands, but that his negligence did not take him out of the scope of his employment.

The Commission also found from the conflicting evidence that Bragg had on two previous occasions hauled trash from the service station to the city dump in one of Conner's dump trucks, and that a truck was not available on the day of the accident. But there was no finding that Conner knew that any of his trucks had ever been used by Bragg for that purpose, and the evidence is undisputed that the trash around the station was usually collected for several days and then taken to the city dump by one of the regular truck drivers.

Under Code § 65-94 the Industrial Commission's findings of fact, if supported by credible evidence, are conclusive and binding on this Court. *Stump* v. *Norfolk Shipbuilding Corp.*, 187 Va. 932, 935,

48 S. E. 2d 209, 210; *Lynchburg Foundry Co.* v. *Irvin,* 178 Va. 265, 269, 16 S. E. 2d 646, 648. But if there is no credible evidence on which the Commission's findings of fact are based, such findings are not binding upon this Court and the question then presented is one of law. *Byrd* v. *Stonega Coke, Etc., Co.,* 182 Va. 212, 220, 28 S. E. 2d 725, 729; *Bagwell* v. *Doyle,* 187 Va. 844, 849, 48 S. E. 2d 229, 231.

A finding that an injury was sustained in an accident arising out of and in the course of employment within the meaning of the Workmen's Compensation Act is a mixed conclusion of law and fact and is properly reviewable by this Court. *American Furniture Co.* v. *Graves,* 141 Va. 1, 14, 126 S. E. 213, 216. Hence the question presented for us to decide is whether the Commission's findings from the facts and circumstances are sufficient in law to justify the allowance of compensation on the ground that the accident arose out of and in the course of Bragg's employment.

No plea of willful misconduct was filed by Conner and he concedes that the accident occurred within the hours of Bragg's employment. But he asserts that when Bragg got on the front-end loader and operated it he was in a place where he could not have been reasonably expected to be under his contract of employment; that he voluntarily placed himself in a position of danger which unnecessarily increased the risk of injury beyond that contemplated by the parties; and that his injury had no causal relation with the duties required by his employment. Hence, he argues that the accident did not arise out of or in the course of Bragg's employment.

On the other hand the claimant says, and the Commission found, that Bragg was engaged in furthering his master's business at the time of the injury; that negligence in selecting the means and method of conveying the trash did not take him out of the scope of the employment; and if there was a disobedience of his employer's order to leave the front-end loader alone, that did not take him outside of the sphere of his employment.

We have repeatedly held that the words of the statute (Code § 65-7), "arising out of and in the course of the employment," should be liberally construed to carry out the humane and beneficent purposes of the Workmen's Compensation Act. *Norfolk & Washington Steamboat Co.* v. *Holladay,* 174 Va. 152, 157, 5 S. E. 2d 486, 488; *Bradshaw* v. *Aronovitch,* 170 Va. 329, 336, 196 S. E. 684, 686; *Cohen* v. *Cohen's Department Store,* 171 Va. 106, 109, 110, 198 S. E. 476, 477. However, the burden is upon the claimant to prove by a preponderance of the evidence that the accident "arose out of and in

the course of his employment" (*Norfolk & Washington Steamboat Co.*, v. *Holladay, supra; Sullivan* v. *Suffolk Peanut Co.*, 171 Va. 439, 443, 199 S. E. 504, 506, 120 A. L. R. 677, 680), and the words cannot be liberalized by judicial interpretation for the purpose of allowing compensation on every claim asserted. *Van Geuder* v. *Commonwealth*, 192 Va. 548, 553, 65 S. E. 2d 565, 568; *Humphries* v. *Newport News Shipbuilding & Dry Dock Co.*, 183 Va. 466, 479, 32 S. E. 2d 689, 695.

The expressions "arising out of" and "in the course of" are used conjunctively and are not synonymous. Both conditions must be present before compensation can be awarded. *Southern Motor Lines* v. *Alvis*, 200 Va. 168, 170, 104 S. E. 2d 735, 737; *Dreyfus & Co.* v. *Meade*, 142 Va. 567, 569, 129 S. E. 336; 99 C. J. S., Workmen's Compensation, § 208, pp. 677, 678.

The words "arising out of" have been construed by us to refer to the origin or cause of the injury, and the words "in the course of" refer to the time, place and circumstances under which the accident occurred. *Southern Motor Lines* v. *Alvis, supra*, 200 Va. at p. 170, 104 S. E. 2d at p. 737; *Bradshaw* v. *Aronovitch, supra*, 170 Va. at p. 329, 196 S. E. at p. 686; 99 C. J. S., Workmen's Compensation, § 208, p. 678.

■ We have said many times that an accident occurs in the "course of employment" when it takes place within the period of employment, at a place where the employee may be reasonably expected to be, and while he is reasonably fulfilling the duties of his employment or is doing something which is reasonably incidental thereto. *Norfolk & Washington Steamboat Co.* v. *Holladay, supra*, 174 Va. at pp. 157, 158, 5 S. E. 2d at p. 488; *Bradshaw* v. *Aronovitch, supra*, 170 Va. at p. 335, 196 S. E. at p. 686; *Southern Motor Lines* v. *Alvis, supra*, 200 Va. at p. 170, 104 S. E. 2d at p. 737.

■ As a guide for determining whether an accident arises "out of" the employment, we have many times cited and quoted with approval the widely accepted definition and test adopted in *In re McNicol*, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306. There it is said that an injury "arises 'out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure

occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." *Norfolk & Washington Steamboat Co.* v. *Holladay, supra,* 174 Va. at pp. 157, 158, 5 S. E. 2d at p. 488; *Cohen* v. *Cohen's Department Store, supra,* 171 Va. at pp. 109, 111, 198 S. E. at p. 477, 478; *Bradshaw* v. *Aronovitch, supra,* 170 Va. at p. 335, 196 S. E. at p. 686; *Farmers Mfg. Co.* v. *Warfel,* 144 Va. 98, 131 S. E. 240. See also 99 C. J. S., Workmen's Compensation, § 209 b., pp. 680, 681, 683, 684, 685.

■ Thus it clearly appears that in order for an injury to be compensable on the ground that it arose out of and in the course of employment it is not enough to show merely that the accident occurred during the period of the employment and while the employee was about his master's business. It must also be shown that the accident occurred at a place where, from the nature of the work, the employee was reasonably expected to be. *Norfolk & Washington Steamboat Co.* v. *Holladay, supra,* 174 Va. at p. 158, 5 S. E. 2d at p. 489.

When an employee chooses to go to a dangerous place where his employment does not necessarily carry him, and incurs dangers of his own choosing which are altogether outside of any reasonable requirement of his position, the risk arising from such action is not incident to and does not arise out of the employment. *Norfolk & Washington Steamboat Co.* v. *Holladay, supra; Simon* v. *Standard Oil Co.,* 150 Neb. 799, 36 N. W. 2d 102, 106; *White Star Motor Coach Lines* v. *Industrial Commission,* 336 Ill. 117, 168 N. E. 113, 115.

The front-end loader was stored in the parking area of Conner's service station only until it could be taken to his sand and gravel pit, where it was to be used to load vehicles transporting materials in connection with his hauling, grading, and excavating business. A front-end loader, as its name implies, is commonly used for the purpose of loading materials such as dirt, sand and gravel on trucks or

other hauling equipment. It was not designed or constructed for use in connection with operation of the service station or for the purpose of hauling materials or containers of trash, and prior to its use by Bragg on the day of the accident it had not been used for such purposes. Bragg was aware that it was not constructed, or intended to be used, to haul trash because he testified that he had to tie the crate containing the trash to the bucket of the front-end loader in order to prevent it from falling off. Moreover, he had been told twice by Conner not to bother the machine. Even Conner's young son recognized that it was not suitable for hauling trash and told Bragg not to use it. There was no emergency existing which required its use, and it is apparent that Bragg used it primarily to satisfy his own desire.

When Bragg got on the machine and operated it he was in a place where he was not reasonably expected to be, and its use was not incidental to the reasonable fulfillment of his employment contract.

The evidence shows, and the Commission so found, that Bragg was not familiar with the operation of the front-end loader and it was dangerous for him to operate it. Yet, he voluntarily put himself in a place of danger, which was outside of any reasonable requirement of his employment, and his injury did not arise out of his employment contract.

It is apparent that there was no causal connection between the requirement of Bragg's employment and the resulting injury.

We do not agree with the Commission that this is a case in which Bragg was merely negligent in his choice of the conveyance used and the manner in which he performed his duties, or that the disobedience of Conner's order to leave the front-end loader alone did not take him out of the sphere and scope of his employment.

It is true that negligence in the choice of the means and manner of performing duties under a contract of employment and disobedience of the employer's orders do not take the employee out of the sphere and scope of his employment and prevent recovery for an injury when the employee is working at a place where his duties reasonably require him to be. See *Tyree* v. *Commonwealth*, 164 Va. 218, 223, 179 S. E. 297, 298, 299; *Bradshaw* v. *Aronovitch, supra*, 170 Va. at pp. 338, 339, 196 S. E. at pp. 687, 688. But the instant case presents no such situation. Here Bragg was injured while operating a machine not designed for the use he made of it, and on which he was not reasonably expected to be, and had no right to be, under his employment contract. He stepped beyond the sphere and

scope of his employment to satisfy his own desire to operate the machine.

For the reasons given, we are of opinion that the evidence does not support the finding of the Commission that the claimant's injury arose out of and in the course of his employment. Hence, the award of compensation to him is erroneous and the award appealed from is

*Reversed.*