COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Benton and Kelsey
Argued by teleconference


MEGA CONTRACTORS, INC. AND
 VIRGINIA CONTRACTORS GROUP
 SELF-INSURANCE ASSOCIATION          MEMORANDUM OPINION[*] BY
                                  CHIEF JUDGE JOHANNA L. FITZPATRICK
v.   Record No. 1843-02-2              FEBRUARY 4, 2003

JOHN THOMAS BURRELL (DECEASED)
 BY MARIAN BURRELL (WIDOW)


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Roger L. Williams (Williams & Lynch, on
        brief), for appellants.

        B. Elliott Bondurant(Hudson & Bondurant,
        P.C., on brief), for appellee.


    Mega Contractors, Inc. (employer) contends the Workers'

Compensation Commission (commission) erred in finding that John

Thomas Burrell (Burrell) was killed in an accident arising out

of and in the course of his employment and that Burrell did not

intentionally violate a safety rule promulgated by employer

barring compensation.  Finding no error, we affirm the

commission's decision.

I.  FACTS

    "On appeal, we view the evidence in the light most

favorable to the claimant, who prevailed before the commission."

---

    * Pursuant to Code § 17.1-413 this opinion is not
designated for publication.

*Allen & Rocks, Inc. v. Briggs*, 28 Va. App. 662, 672, 508 S.E.2d 335, 340 (1998) (citations omitted). "'Decisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court.'" *WLR Foods v. Cardosa*, 26 Va. App. 220, 230, 494 S.E.2d 147, 152 (1997) (quoting *Manassas Ice & Fuel Co. v. Farrar*, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991)). "The commission, like any other fact finder, may consider both direct and circumstantial evidence in its disposition of a claim." *VFP, Inc. v. Shepherd*, 39 Va. App. 289, 293, 572 S.E.2d 510, 512 (2002). "Where reasonable inferences may be drawn from the evidence in support of the commission's factual findings, they will not be disturbed by this Court on appeal." *Hawks v. Henrico County School Board*, 7 Va. App. 398, 404, 374 S.E.2d 695, 698 (1988). "In determining whether credible evidence exists, [this Court will] not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." *Wagner Enters., Inc. v. Brooks*, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991) (citation omitted). "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the commission's finding." *Id.*

On September 9, 2000, employer, a paving company, was performing roadwork near the tollbooths on the downtown expressway in Richmond. Burrell, who worked as a milling

-

machine operator for employer, was struck and killed by a vacuum truck. At the time of the accident, he had moved approximately sixteen feet away from his position at the rear of the milling machine and was standing in the prior section watching the milling machine. He was struck by the vacuum truck as it reversed to return to the beginning of that section. Burrell was not visible to the driver of the vacuum truck, and witnesses heard no warning sounds.

Burrell was an "experienced groundsman" for employer. He walked behind and to the side of the milling machine to monitor sensors that gauged the depth of the cut the machine made in the pavement. Burrell's job required that he monitor and adjust the sensors and make sure no obstructions interfered with their performance. Additionally, he was required to check the belts and wear on parts of the machine and observe the pavement that the milling machine cut so that the "asphalt will be smooth."

Typically, the milling machine makes three passes to cut a section of pavement. The pavement that is cut is scooped by the milling machine into a dump truck that moves with the milling machine. The milling machine is followed by a sweeper truck and finally, a vacuum truck moves up the cut to clear up any debris that remains. When the truck reaches the end of the cut in the pavement, it backs up in the cut to return to the starting point and begins again. Both the milling machine and the vacuum truck move simultaneously. The milling machine makes a first cut on

-

the next section while the vacuum truck makes its first pass on the section that the milling machine and the sweeper have just finished. At the time of the accident, the noise level was high. The milling machine, the vacuum truck and a dump truck in front of the milling machine were running, and the sweeper truck was idling. The vacuum truck was equipped with a back-up alarm, but it was inaudible to witnesses at the time of the accident.

Roy Anderson, the general superintendent on this site, testified, "I was being the groundsman on the right side of the [milling] machine, helping [Burrell] who was on the left side of the machine." He stated that part of the groundsman's job is to check the prepared surface to make sure it is smooth. This can be accomplished by the groundsman running his hands or feet over the surface. He had never seen anyone step back into the prior cut to check the surface, but each groundsman can use any method he chooses based on his experience.

Immediately before the accident, Anderson stepped away from his position beside the milling machine and walked to Burrell's side and "noticed some material . . . the vac [sic] truck had . . . left [in a prior cut] which was 21 feet [beside] the milling machine." He approached the vacuum truck driver and told him to make another pass on the preceding section. He did not tell Burrell the vacuum truck would be returning to the beginning of the cut. The operator of the milling machine

-

testified he saw Burrell adjusting the sensors on the machine before the accident.

The commission found that:

> The evidence reveals that [Burrell] was looking at the cut at the time of the accident, and that it was part of his job to make sure the cut is level. Although Mr. Anderson never saw anyone check the cuts in this manner, he stated the method for doing so is dependent upon the experience of the groundsman. Mr. Burrell was an experienced groundsman, and there was no requirement that the groundsmen must stay within arms length of the machine at all times. Mr. Anderson was performing the functions of a groundsman and had also left his position at the side of the machine to go talk with the vacuum truck driver. This left Mr. Burrell as the only groundsman monitoring the cuts and the sensors. Just prior to the accident, [Burrell] had been observed performing his duties next to the milling machine. Based on this evidence, we find [Burrell] was reasonably where he was expected to be, fulfilling the duties of his employment. Therefore, we agree with the Deputy Commissioner that this accident arose out of and in the course of Mr. Burrell's employment.

As part of employer's safety program, all employees received a company handbook and attended regular safety meetings. Safety rule No. 9 states that workers "stay clear of buckets, loads and counterweights. Never walk behind or on the blind side of equipment or vehicles; maintain eye contact with the operator/driver while crossing." Burrell was present at meetings where that rule was discussed.

-

The commission further found that:

> After careful consideration of the evidence, we find no intentional violation of the safety rule cited by the employer. There is no evidence that Mr. Burrell knew he was in the blind spot of the vacuum truck. Mr. Straus testified that [Burrell] was not looking at the [vacuum] truck. Additionally, there were several pieces of equipment running at the time of the accident. The milling machine operator has to wear earplugs because the machine is so loud. At least one of the alarms on the vacuum truck was inaudible, and the witnesses did not testify that they heard a warning signal coming from the vacuum truck.
>
> Moreover, until Mr. Anderson had spoken with the vacuum truck driver, the vacuum truck had been proceeding forward in a lane at some distance from the milling machine. Mr. Anderson did not speak with Mr. Burrell to tell him that the vacuum truck would be backing up. . . . Based on this evidence, we agree with the Deputy Commissioner's finding that the employer failed to prove willful misconduct.

(Internal citations omitted). Employer appealed the commission's decision.

## II.

Employer first argues that Burrell's accident did not arise out of his employment because he was not at a place where he was reasonably expected to be. We disagree.

"Whether an accident arises out of employment is a mixed question of law and fact and is . . . reviewable upon appeal." Mullins v. Westmoreland Coal Co., 10 Va. App. 304, 307, 391 S.E.2d 609, 611 (1990) (citation omitted).

-

An accident arises out of the employment when there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed. Under this test, an injury arises "out of" the employment when it has followed as a natural incident of the work and has been a result of the exposure occasioned by the nature of the employment. Excluded is an injury which comes from a hazard to which the employee would have been equally exposed apart from the employment. The causative danger must be peculiar to the work, incidental to the character of the business, and not independent of the master-servant relationship. The event must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.

United Parcel Service v. Fetterman, 230 Va. 257, 258-59, 336 S.E.2d 892, 893 (1985) (internal citations omitted). "[The Workers' Compensation Act] has always required the claimant to carry the burden of proving, by a preponderance of the evidence, . . . an 'injury by accident' . . . arising out of and . . . in the course of, the employment." Morris v. Morris, 238 Va. 578, 584, 385 S.E.2d 858, 862 (1989).

Credible evidence supports the commission's finding that at the time of the accident, Burrell was on the job site, performing his work in an area where he was reasonably expected to be. He was standing less than sixteen feet from the milling machine looking at an area of pavement that had just been cut. An essential part of Burrell's job was to check the cut pavement to make sure it was smooth. The evidence in the record proved

-

that the method for checking the cut pavement is properly determined by each groundsman based on his experience. Contrary to employer's argument, no evidence proved that Burrell was required to stay within an arm's length of the milling machine. In fact, Anderson, the general superintendent, who was also working as the groundsman on the right side of the milling machine, left his position and went to the previously cut area to inspect for debris.

Employer relies on the holding in Norfolk and Wash. S. Co. v. Holladay, 174 Va. 152, 5 S.E.2d 486 (1939), and Conner v. Bragg, 203 Va. 204, 123 S.E.2d 393 (1962), to support its contention that Burrell was not in a place where he was reasonably expected to be. This reliance is misplaced.

In Holladay, the claimant, a passenger representative and tour conductor for a steamboat company, was struck by a train while crossing a train trestle. He left his job site to procure whiskey for some passengers from a liquor store located more than a mile away. While taking a "shortcut" over the train trestle, he was struck by a train and injured. On these facts, the Supreme Court held that:

> We have a situation, then, in which there
> was no causal connection between the
> conditions under which the work was required
> to be done and the resulting injury; one in
> which the injury can not be said to have
> followed as a natural incident of the work
> and to have been contemplated in the
> contract of employment, but on the contrary
> resulted from a hazard and risk which the

-

employee voluntarily brought upon himself by putting himself in a manifestly dangerous place where he had no right to be and where the work which he was doing for his employer did not reasonably require him to be. In such a situation the employee is not entitled to compensation.

174 Va. 159-60, 5 S.E.2d at 489 (emphasis added).

In Conner, Bragg, an employee of Conner's service station, was warned to "leave [the front-end loader] alone." However, he filled its bucket with trash and drove to the city dump. Bragg, who had no experience operating the machinery, continued to drive it after it kept "slipping out of gear." The front-end loader eventually turned over and injured claimant.

The Supreme Court held that:

The evidence shows, and the Commission so found, that Bragg was not familiar with the operation of the front-end loader and it was dangerous for him to operate it. Yet, he voluntarily put himself in a place of danger, which was outside of any reasonable requirement of his employment, and his injury did not arise out of his employment contract.

*     *     *     *     *     *     *

Here, Bragg was injured while operating a machine not designed for the use he made of it, and on which he was not reasonably expected to be, and had no right to be, under his employment contract. He stepped beyond the sphere and scope of his employment to satisfy his own desire to operate the machine.

203 Va. 210-11, 123 S.E.2d at 398 (emphasis added).

-

Neither case is factually compatible with an employee who is standing in the specific job site area required by his work and who is attempting to perform a required job function. Burrell did not choose a dangerous path or route away from his work site as in <u>Holladay</u>, nor was he operating machinery with which he was unfamiliar and had been specifically warned to avoid as in <u>Conner</u>. This accident occurred during the work day and at the time of the accident he was within sixteen feet of the milling machine, looking back at the cut pavement. These circumstances establish that Burrell's injury by accident was a natural incident of his work and resulted from an exposure occasioned by the nature of this work. Thus, the commission correctly found the accident arose out of Burrell's employment.

III.

Employer next contends that Burrell is barred from receiving compensation because he willfully violated a company safety rule. We also disagree.

Code § 65.2-306(A) and (B) provide in pertinent part:

> A. No compensation shall be awarded to the employee or his dependents for an injury or death caused by:
>
> 1. The employee's willful misconduct or intentional self-inflicted injury;
>
>    *    *    *    *    *    *    *
>
> 5. The employee's willful breach of any reasonable rule or regulation adopted by the employer and brought, prior to the accident, to the knowledge of the employee . . . .

-

> B. The person or entity asserting any of the defenses in this section shall have the burden of proof with respect thereto. . . .

"To establish this defense, the employer must prove: (1) the rule was reasonable; (2) the employee knew of the rule; (3) the rule was for the employee's benefit; and (4) the employee intentionally performed the forbidden act." Dan River, Inc. v. Giggetts, 34 Va. App. 297, 302, 541 S.E.2d 294, 297 (2001) (citing Buzzo v. Woolridge Trucking, Inc., 17 Va. App. 327, 332, 437 S.E.2d 205, 208 (1993)).

> Whether the rule is reasonable and applies to the situation from which the injury results, and whether the claimant knowingly violated it, is a mixed question of law and fact to be decided by the commission and reviewable by this Court. But the question of whether an employee is guilty of willful misconduct and whether such misconduct is a proximate cause of the employee's accident are issues of fact.

Brockway v. Easter, 20 Va. App. 268, 270-71, 456 S.E.2d 159, 161 (1995). "The defense may be established without the necessity of proving that the employee, with the rule in mind, purposefully determined to break it. It is sufficient to show that, knowing the safety rule, the employee intentionally performed the forbidden act." Spruill v. Wright Construction Company, Inc., 8 Va. App. 330, 334, 381 S.E.2d 359, 361 (1989) (internal citations omitted).

In this case, the commission found no intentional or willful violation of a safety rule. Burrell was in a part of

-

the work site where he was reasonably expected to be. Eyewitnesses established that the vacuum truck backed toward Burrell and that the noise level was so high no warning signals were heard.  There is no evidence Burrell was aware that he was in the path of the vacuum truck or in that driver's blind spot. Further, Anderson told the vacuum truck to re-sweep the prior cut without notifying Burrell the truck would be backing up in the first cut.  The company's safety rule required an employee to behave a certain way if he was behind, crossing or in a driver's blind spot.  In the instant case, credible evidence supports the commission's finding that Burrell was unaware he was behind the vacuum truck or in the driver's blind spot. Thus, there was no intentional violation of a company safety rule.

For the foregoing reasons, we affirm the decision of the commission.

<u>Affirmed.</u>