COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Petty, Huff and Senior Judge Frank
Argued by videoconference


NEWMAN KNIGHT FRANK AND
 ZURICH AMERICAN INSURANCE COMPANY

                                                            MEMORANDUM OPINION* BY
v.        Record No.  0600-20-2                           JUDGE GLEN A. HUFF
                                                               NOVEMBER 4, 2020
THE ESTATE OF BRUCE A. WILLIAMS, ET AL.


             FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

             Kevin W. Cloe (Timothy D. Watson; Midkiff, Muncie & Ross,
             P.C., on briefs), for appellants.

             Craig A. Brown (The Law Office of Craig A. Brown, PLLC, on
             brief), for appellees.


        Newman Knight Frank and its insurer, Zurich American Insurance Company

(collectively, "employer"), appeal the Workers' Compensation Commission's award of benefits

to the widow, dependent children, and estate of Bruce A. Williams ("decedent").  Employer

asserts that the Commission erred by:  (1) finding that decedent's death occurred by means of an

accident that arose out of and in the course of his employment; (2) applying the personal comfort

doctrine; (3) applying the death presumption codified in Code § 65.2-105; and (4) awarding

benefits, burial expenses, and transportation expenses.

        This Court finds no error in the Commission's ruling.  The Commission's finding that

decedent was either resting before his shift or working is supported by credible evidence in the

record and is therefore binding.  Furthermore, the Commission did not err in determining that,

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

regardless of which was true, decedent's injury arose out of and in the course of his employment. Accordingly, this Court affirms the Commission's award of benefits.

I. BACKGROUND

"Under settled principles of appellate review, we consider the evidence in the light most favorable to [claimant] as the prevailing party before the commission." Layne v. Crist Elec. Contractor, Inc., 64 Va. App. 342, 345 (2015). So viewed, the evidence shows the following:

Decedent worked as a master electrician for employer, covering several buildings that were located in the same office park in Falls Church. According to employer's job description, decedent was "[r]esponsible for working from blueprints and drawings in an effort to assemble, install, test, troubleshoot, repair, adjust, and maintain HVAC fixtures, apparatus, equipment, and wiring." However, there was a separate chief engineer for the buildings that "gave out all the scope of work that needed to be done." Therefore, decedent did not frequently work with blueprints. Instead, he typically worked as one of the lead technicians repairing and maintaining the buildings and equipment. In addition to regular shift work, decedent was on-call outside of his normal shift hours. Decedent lived approximately forty-five minutes away from the office park in good traffic, although the commute often took much longer in D.C. metro area traffic. Due to the combination of his on-call hours and the lengthy commute, decedent was known by employer to occasionally spend the night at work.

Toward the end of 2016, a number of other employees had ceased working for employer. This meant that decedent was "pretty much the only master electrician that was left." As a result, decedent had assumed additional work duties and had to help with virtually any electrical work that was necessary at any of the buildings.

On December 20, 2016, decedent completed a normal work shift. Shortly after returning home, decedent received a call from employer requiring him to return to work because people

had gotten stuck in an elevator. After fixing the elevator problem, decedent returned home at approximately 9:00 p.m. However, "right after he got into [his] house from taking care of that issue, [employer] called him again" due to a false alarm from one of the fire alarms and decedent returned to work.

Upon arriving at the office park, decedent met his supervisor, Evan Saunders.[1] The two worked on the faulty fire alarm and resolved the problem. Afterwards, Saunders returned to his home and decedent remained at work on "fire watch," which involved monitoring the fire alarm in case another false alarm occurred. Decedent's fire watch concluded at 6:00 a.m. on December 21.

Shortly after 6:00 a.m. Saunders began receiving text messages from decedent. At 6:01 a.m., decedent texted Saunders "I'm in High air pressure. Taking fire panal [sic] offline." Saunders explained that "high pressure is on the fire panel, which is the power to the building, basically saying that the panel . . . basically just saying it was off-line at the panel." At 7:15 a.m., decedent texted Saunders to say "[n]eed new furnas [sic] pressure control switch." Saunders explained that this text "had nothing to do with the [fire] panel" and referred to the boiler system located in a different area of the building than the fire panel.

Decedent was scheduled for a shift that began at 10:00 a.m. that morning, but he never showed up for work. When decedent failed to return home after that scheduled shift, his family began contacting his employer and the police, but to no avail. His wife and three children began searching for decedent on their own. On December 24, 2016, his family saw his van parked in a vacant parking garage approximately 75 to 100 yards from his work. His family approached the

---

[1] Although Saunders was decedent's supervisor, he was not an electrician.

van to investigate and, upon opening the door, found him sitting in the second-row seats, deceased.

Decedent was still dressed in his work clothes with a blanket over his legs. He was "slouched towards the front" with his "hand out" as if "he was reaching for something." Decedent's "work pad with all his schematics there and a pen" were on the seat next to him. Decedent's phone was found on the floor,[2] and his work tools were found in the back of the van. His widow called the police to the scene. Decedent's cause of death was later determined to be carbon monoxide poisoning. The apparent source was from decedent's personal vehicle, as the record indicates no other potential source of carbon monoxide.

After being notified of his death, employer reviewed security camera footage from cameras located outside their buildings. Security footage showed decedent leaving work at approximately 8:00 a.m., getting into his van, and then driving into the vacant parking garage.

Decedent's estate filed a claim for death benefits and burial expenses, which came before Deputy Commissioner Cummins on August 6, 2019. Employer defended, arguing that decedent's estate failed to demonstrate that his injury arose out of or occurred during the course of his employment.[3] The deputy commissioner applied the "death presumption" of Code § 65.2-105—which satisfies the arising out of and in the course of requirements—and awarded benefits.

---

[2] The record indicates that decedent had both a personal cell phone and a work cell phone that was issued by his employer. Although the record is unclear which phone was found on the floor of the van—or where the other phone was—the evidence showed that decedent received work-related calls and texts on both phones.

[3] Employer also argued that decedent's carbon monoxide poisoning was not an injury by accident and posited that it may have been a suicide. However, that argument was rejected by the deputy commissioner and employer did not seek review of that determination.

The full Commission affirmed, albeit in a splintered opinion. Commissioner Newman wrote the majority opinion. Commissioner Newman found it unnecessary to reach the "death presumption" of Code § 65.2-105. Instead, Commissioner Newman found that the evidence established that decedent's injury arose out of and in the course of his employment without need to resort to the presumption. Commissioner Newman determined that there were only two possibilities to explain decedent's actions at the time of his death. Either decedent was working—in which case the in the course of employment element is satisfied—or he was resting during the short two-hour break he was afforded before starting another shift of work. Commissioner Newman determined that even if decedent was resting, the personal comfort doctrine would apply and therefore would also satisfy the in the course of employment requirement. Commissioner Newman further held that regardless of whether decedent was working or resting, the arising out of employment prong was satisfied because his employment required him to find a place to stay while awaiting his next shift.

Commissioner Marshall wrote a concurring opinion, finding that decedent was working at the time he succumbed to carbon monoxide. Therefore, Commissioner Marshall did not reach either the personal comfort doctrine or statutory presumption questions.

Commissioner Rapaport dissented. Commissioner Rapaport agreed with Commissioner Newman that decedent was either working or resting when he died from carbon monoxide poisoning. However, Commissioner Rapaport maintained that the personal comfort doctrine was inapplicable because decedent had left his work and traveled to a vacant parking garage. In Commissioner Rapaport's opinion, the evidence did not establish decedent was working and not resting. Therefore, Commissioner Rapaport determined that decedent's estate had failed to

- 5 -

satisfy its burden to prove that the injury arose out of and in the course of decedent's employment.[4]

This appeal followed.

## II. STANDARD OF REVIEW

Whether an injury was sustained in the course of and arose out of employment present mixed questions of law and fact. Conner v. Bragg, 203 Va. 204, 207 (1962). The legal component of that question is reviewed *de novo*. O'Donoghue v. United Cont'l Holdings, Inc., 70 Va. App. 95, 103 (2019). The accompanying "factual findings of the commission are binding if they are supported by credible evidence." Wagner Enterprises, Inc. v. Brooks, 12 Va. App. 890, 894 (1991) (citations omitted). In determining whether credible evidence exists, this Court will not "retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Id.

## III. ANALYSIS

Employer argues that decedent's estate failed to meet its burden to prove that decedent's injury arose out of and in the course of his employment. This Court disagrees. The Commission's finding that decedent was either working or sleeping in preparation for his next shift are both supported by credible evidence in the record. Furthermore, the Commission did not err in finding that decedent's injury would be compensable in either case. Therefore, this Court affirms the Commission's award of benefits.[5]

---

[4] Commissioner Rapaport's opinion did not explain why he viewed the deputy commissioner's application of the statutory presumption in Code § 65.2-105 to be incorrect.

[5] Because this Court affirms on these grounds, we need not address whether a "death presumption" applies in this case.

A.  The Commission's Factual Findings

The Commission found that decedent was either working or resting in preparation for his next shift at the time he succumbed to carbon monoxide poisoning.  This finding is supported by credible evidence in the record.

The evidence indicates that, after working a shift the day before and working through the night, decedent's van entered the parking garage shortly after 8:00 a.m.—within two hours of his next work shift.  Decedent was found sitting upright in his van in the second-row seating.  Decedent was slouched slightly forward with his hand outstretched.  He had a blanket over his legs and on the seat next to him were his work pad, schematics, and a pen.  His work tools were in the vehicle with him.  Furthermore, at 7:15 a.m., shortly before he went to the parking garage, decedent had notified employer that he identified a new problem with the boiler system that was unrelated to his other work that morning or the prior evening.

It is, of course, impossible to know with absolute certainty what decedent was doing at the time of his death.[6]  However, that is not the standard this Court is to apply.  This Court only asks whether credible evidence exists to support the Commission's findings.  Here, the entirety of the evidence supports a finding decedent was either working or resting.  Indeed, nothing

_____

[6] On brief, employer speculated as to other activities that decedent could have been doing besides working or resting:

> At the time of his death the claimant could have been napping, or he could have been passing time until his shift started.  Or, since the record contains no evidence of when he died, he could have skipped work on December 21 and stayed in [the] vacant garage playing games, and not have died until after his shift would have been over.

Employer, however, points to no evidence in the record to support its speculations.  Moreover, proffering alternative factual theories is little more than an invitation to re-weigh the evidence.  Alternative factual theories are of no consequence when querying whether the record contains credible evidence to support the Commission's findings.

contradicts that finding. Employer makes much of the fact that decedent had not been assigned a work project during those two hours and only rarely worked with schematics. However, rarely does not mean never and the fact remains that working with schematics is part of *employer's* description of decedent's job. Furthermore, it is hard to imagine employer objecting to decedent working during his off-hours had this story not ended so tragically; especially when decedent had just identified a new problem in the boiler system shortly before his next working hours.

In sum, credible evidence supports the Commission's finding that decedent was either resting or working at the time of his death. Therefore, that finding is binding on this Court.

### B. The Commission's Legal Conclusions

The Commission determined that decedent's injury arose out of and in the course of his employment regardless of whether he was working or merely resting before his shift began. Therefore, to affirm the Commission's award, both conclusions must be correct. See, e.g., Kraf Const. Servs., Inc. v. Ingram, 17 Va. App. 295, 298 (1993); see also O'Donoghue, 70 Va. App. at 115 (Huff, J., dissenting) ("If an employee seeks coverage for injuries that must have arisen from one of multiple mechanisms, and each of those mechanisms would satisfy the actual risk test, then the injury must satisfy the actual risk test and is thus compensable."). This Court holds that whether decedent was working or resting, either would satisfy the standard for compensability.

### 1. Decedent's injury is compensable if he was working.

Employer contends that even if the Commission is correct that decedent was working at the time of his death, his injury still did not arise out of and in the course of decedent's employment. This Court disagrees.

To prove a compensable injury under the Workers' Compensation Act (the "Act"), a claimant must prove: "(1) that the injury was caused by an accident; (2) that the injury was

sustained in the course of the employment; and (3) that the injury arose out of the employment." Van Buren v. Augusta County, 66 Va. App. 441, 449 (2016) (quoting Southland Corp. v. Parson, 1 Va. App. 281, 284 (1985)). When interpreting these requirements, courts must remain mindful that "the Act is remedial legislation and should be liberally construed in favor of the injured employee." E.I. Du Pont De Nemours v. Eggleston, 264 Va. 13, 17 (2002) (citing Byrd v. Stonega Coke & Coal Co., 182 Va. 212, 221 (1944)). On appeal, employer challenges only the second and third prongs.

"[T]he words 'in the course of' refer to the time, place and circumstances under which the accident occurred." Hess v. Virginia State Police, 68 Va. App. 190, 196 (2017) (quoting Conner, 203 Va. at 208). An injury "occurs in the 'course of employment' when it takes place within the period of employment, at a place where the employee may be reasonably expected to be, and while he is reasonably fulfilling the duties of his employment or is doing something which is reasonably incidental thereto." Clifton v. Clifton Cable Contracting, L.L.C., 54 Va. App. 532, 539 (2009) (citing Conner, 203 Va. at 208).

Here, there is little doubt that, if decedent was working at the time of his death, then the injury leading to his death occurred in the course of his employment. That he was working plainly implies that he was reasonably fulfilling the duties of his employment. Furthermore, although it was not during one of his assigned shifts, the injury occurred during his period of employment. As the twenty-four hours before his death demonstrate, decedent's work was not limited to only his scheduled shift hours. Employer expected him to be available to work whenever necessary. Decedent was engaged in the course of his employment from approximately 10:00 p.m. the night before to 8:00 a.m. that morning while working on the fire panel and boiler systems despite it being outside of his assigned shifts. To the extent that decedent continued working after leaving the building at 8:00 a.m., that continued to be within

the period of his employment.  Moreover, decedent was injured in a place employer could have reasonably expected him to be.  Employer was aware that decedent often spent the night at or near his work after being called in due to his long commute.  In this case, decedent had been working for well over twelve hours straight.  Moreover, decedent had only two hours until beginning his shift and faced a round-trip commute that would take an hour and a half, at a minimum.  Considering these circumstances, employer could have reasonably expected that decedent would retreat to his vehicle prior to beginning his next shift.

Decedent's injury must also have arisen out of his employment.  "The words 'arising out of' . . . refer to the origin or cause of the injury."  Conner, 203 Va. at 208.  It "covers those accidents which cause injury to an employee while he is discharging some duty he is authorized to perform in furtherance of his employer's business, either directly or indirectly."  Lucas v. Lucas, 212 Va. 561, 563-64 (1972) (citing Cohen v. Cohen's Dep't Store, 171 Va. 106, 110 (1938)).

The "actual risk test" defines the scope of the "arising out of" prong.  O'Donoghue, 70 Va. App. at 104.  "This test requires proof that 'the employment expose[d] the work[er] to the particular danger from which he was injured, notwithstanding the exposure of the public generally to like risks.'"  Id. (quoting Lucas v. Fed. Express Corp., 41 Va. App. 130, 134 (2003)).  The "actual risk test" is satisfied "when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury."  Hess, 68 Va. App. at 196 (quoting Bradshaw v. Aronovitch, 170 Va. 329, 335 (1938)).  The requisite causal connection, however, is not that some aspect of one's employment directly caused an injury by accident.  Rather, a claimant need only show that the "employment relationship 'caused the employee to be at the place he was at the time of the accident, and thus exposed him . . . to the hazard or risk of

- 10 -

the happening of the accident[.]'" Lucas, 212 Va. at 563 (quoting Honaker & Feeney v. Hartley, 140 Va. 1, 13 (1924)). Thus, "[a] risk is incidental to the employment when it belongs to or is connected with what the employee has to do in fulfilling his contract of service." Kane Plumbing, Inc. v. Small, 7 Va. App. 132, 137 (1988) (quoting Reserve Life Ins. Co. v. Hosey, 208 Va. 568, 572 (1968)).

Employer contends that decedent dying from carbon monoxide poisoning in his personal vehicle is too attenuated from his job requirements to qualify as arising out of his employment. This argument misapprehends the governing legal principles. The core question is not the closeness of the relation between the injury and the employee's work duties; the key is whether the employment relationship caused the employee to be exposed to the injury by accident. See, e.g., Lucas, 212 Va. 561 (holding that an employee's injury arose from his employment despite being injured while running an errand for his boss that was unrelated to his job duties); Honaker & Feeney, 149 Va. 1 (holding that a woodsman's injury arose out of his employment when he fell outside the bunkhouse door of his employer's lumber camp while not on duty).

Here, the evidence demonstrates that decedent's employment "caused [him] to be at the place he was at the time of the accident and thus exposed him . . . to the risk." Lucas, 212 Va. at 563 (quoting Honaker & Feeney, 140 Va. at 13). Decedent's work required him not only to work a full shift on December 20, but also to respond to two emergency maintenance problems. By the time decedent had finished his work with the malfunctioning fire alarm and left the office building, it was already 8:00 a.m. Decedent's next assigned shift started at 10:00 a.m., leaving him no time to return home. Assuming that he opted to continue working, it is not unreasonable nor unexpected that decedent chose to use his vehicle as a workspace. This is especially true given that the record makes no mention of decedent having an office or dedicated workspace within the building.

Given these circumstances, this Court finds no error with the Commission's determination that decedent's injury arose from his employment. As the Commission succinctly noted: "an employer cannot work the decedent so extensively that he is unable to return home and then claim immunity from his death while the worker waits in this vehicle for his next shift to begin."

## 2. Decedent's injury is compensable if he was resting.

Employer contends that, if decedent was resting prior to his shift, then his injury did not arise out of or in the course of his employment. Employer argues that the Commission erred by applying the personal comfort doctrine to the facts of this case. Furthermore, employer asserts that the personal comfort doctrine, even if it applies, satisfies only the "in the course of employment" prong.

The personal comfort doctrine recognizes that certain acts "are necessary to the life, comfort, and convenience of the servant while at work." Bradshaw, 170 Va. at 337. Therefore, while such acts are "strictly personal to [the servant], and not acts of service, [they] are incidental to the service." Id. "Such activities benefit the employer by enhancing feasibility and desirability of employment, good physical and mental conditioning of his employees, and the cultivation of good employment relationships." Ablola v. Holland Road Auto Center, Ltd., 11 Va. App. 181, 183 (1990). Accordingly, injuries which occur during "breaks and excursions for food, drink, rest and restroom visitation" may be compensable under the Act. See, e.g., Southern Motor Lines Co. v. Alvis, 200 Va. 168, 171 (1958) (injury compensable where employee fell out the window of a hotel room employer provided him); Kraf Const. Servs., 17 Va. App. 295 (injury compensable where employee was hit by a car crossing the street to get a drink from a convenience store); Bradshaw, 170 Va. 329 (injury compensable where employee fell out of a moving work vehicle while reaching for a beverage).

- 12 -

"If the employer provides the employee a satisfactory place to satisfy his personal comfort, the employee must use that place or risk the loss of compensation." Kraf Const. Servs., 17 Va. App. at 299. However, where a place to satisfy the employee's personal comfort is not provided by employer, the question becomes whether the activity satisfying the employee's personal comfort "is incidental to the . . . employment or a 'frolic' of one's own." Id.

This Court has no difficulty determining that the personal comfort doctrine applies if decedent was resting prior to his shift. There is little doubt that employees need sleep and rest to be alert and fit for the responsibilities of their employment. See Alvis, 200 Va. at 171. This is doubly true for a master electrician, for whom a small error may result in grave personal injury or significant disruption to the building or system upon which they are working. Decedent worked a normal shift on December 20 and then fielded two emergency calls. Decedent worked through the night and did not leave his place of employ until 8:00 a.m. on December 21. His next assigned shift began a mere two hours later, leaving him insufficient time to return home despite having worked continuously for the better part of twenty-four hours. Employer provided decedent no accommodations for him to rest during this brief window. These circumstances make clear that if decedent retreated to his vehicle to rest for the two hours he was afforded, it was for his personal comfort and incidental to the requirements of his job.[7]

---

[7] Employer, on brief, attempts to frame this issue as being decedent's fault for living so far away from his place of employment. Employer contends that taking such a factor into account would unduly expand potential liability. First and foremost, forty-five minutes is not particularly far, especially considering that this case arose in the Washington D.C. metro area. Regardless, employer's concerns are overstated. The pertinent question is whether an employee's work requirements necessitate him taking time to rest such that it is incidental to his employment. This is necessarily a fact-specific inquiry. The facts here indicate that decedent had been working for the better part of twenty-four hours and was afforded only two hours before his next shift began. These working conditions plainly necessitated decedent taking time to rest such that it was incidental to his employment.

Employer argues that even if the personal comfort doctrine applies, it can satisfy only the "in the course of employment" prong of the statutory test. This is a matter of some debate, and precedent offers conflicting answers.[8] Nonetheless, this Court need not resolve that question today. Even if application of the personal comfort doctrine fails to satisfy the "arising out of" prong, this Court's analysis above is equally applicable here. Decedent's injury arose from his employment if he was resting for the same reasons that decedent's injury arose from his employment if he was working: his employment afforded him no time to return home and no temporary lodgings. Therefore, his employment required him to find an alternative place to rest. Accordingly, this Court finds no error with the Commission's determination that decedent's injury was compensable if he were resting.

_____

[8] Compare Alvis, 200 Va. at 171 ("an injury sustained by an employee while engaged in the performance of an act essential to his personal comfort and convenience, but ultimately for the benefit of the employer, is compensable as arising out of and in the course of employment"); Bradshaw, 170 Va. at 337 ("Such acts are necessary to the life, comfort, and convenience of the servant while at work . . . and injury sustained in the performance thereof is deemed to have arisen out of the employment."), and Campbell v. Food Lion, LLC, #835, No. 3156-03-2, *10 (Va. Ct. App. July 27, 2004) ("[a]n injury sustained by an employee 'out of' and 'in the course of' the employment while engaged in the performance of an act essential to his personal comfort and convenience . . . is compensable as 'arising out of' and 'in the course of' the employment" (quoting Cadmus Magazines v. Williams, 30 Va. App. 129, 132 (1999))), with Ablola, 11 Va. App. at 183 ("Virginia has long recognized the personal comfort doctrine . . . [t]hus occasional breaks [for personal comforts] are deemed to be in the course of employment."); CJW Medical Center v. Wallace, No. 2542-11-2, *6-7 (Va. Ct. App. July 31, 2012) ("The personal comfort doctrine operates only to keep the employee within the course of employment; it has no bearing on whether the injury arises out of the employment." (citing Circuit City Stores, Inc. v. Ill. Workers' Comp. Comm'n, 909 N.E.2d 983, 990 (Ill. App. Ct. 2009))); Angelo v. Stihl, Inc., No. 0564-09-1, *3 n.1 (Va. Ct. App. Oct. 27, 2009) ("The personal comfort doctrine operates only to keep the employee within the course of employment; it has no bearing on whether the injury arises out of the employment." (citing Cadmus, 30 Va. App. at 132)); see also Kraf Const. Servs., 17 Va. App. at 299 ("Virginia has adopted the 'personal comfort' doctrine, under which an employee who seeks to satisfy his personal comfort, such as seeking to quench his thirst at a place provided by the employer, is within the employment."); Flynn v. Professional Tile Co., No. 1548-93-4, *4 (Va. Ct. App. Jan. 11, 1994) ("[S]ince claimant had not returned to the scope of his employment at the time of the injury, we need not address the personal comfort doctrine.").

## IV. CONCLUSION

The Commission found that decedent was either resting or working at the time of his death. Because these findings are supported by credible evidence, they are binding on this Court. The Commission further determined that, regardless of whether decedent was working or resting before his shift, his injury was compensable. This Court agrees. Either way, decedent's injury both arose out of and in the course of his employment. Therefore, this Court affirms the Commission's award of benefits.

<u>Affirmed.</u>